# Matter of Graciela QUILANTAN, Respondent

File A095 426 631 - Dallas, Texas

*Decided July 28, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

   For purposes of establishing eligibility for adjustment of status under section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a) (2006), an alien seeking to show that he or she has been "admitted" to the United States pursuant to section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2006), need only prove procedural regularity in his or her entry, which does not require the alien to be questioned by immigration authorities or be admitted in a particular status.  *Matter of Areguillin*, 17 I&N Dec. 308 (BIA 1980), reaffirmed.

FOR RESPONDENT:  Furqan Sunny Azhar, Esquire, Dallas, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Judson J. Davis, Assistant Chief Counsel

BEFORE:  Board Panel:  COLE and PAULEY, Board Members.  Concurring Opinion: FILPPU, Board Member.

COLE, Board Member:


   In a decision dated October 16, 2006, an Immigration Judge found the respondent removable under sections 212(a)(6)(A)(i) and (7)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(6)(A)(i) and (7)(A)(i) (2006), as an alien who entered without being inspected, admitted, or paroled and who was not in possession of a valid entry document.  The Immigration Judge also pretermitted the respondent's application for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (2006), but granted her voluntary departure.  The respondent has timely appealed from that decision and has filed two briefs in support of her appeal. The Department of Homeland Security ("DHS") filed a brief in response to our request for supplemental briefing.  The appeal will be sustained, and the record will be remanded to the Immigration Judge for further proceedings.

# I.  FACTUAL AND PROCEDURAL HISTORY

The basic facts in this case are not in dispute.  The respondent is a native and citizen of Mexico who entered the United States in 1993 using a valid border crossing card.  She remained without departure until December 2000, when she returned to Mexico to visit family members.  At some point between 1993 and 2000, she lost her border crossing card.  In January 2001, she applied for a United States visitor's visa at the consulate in Mexico, but her application was denied.  A few days later, on January 10, 2001, without a valid document to enter, the respondent approached the border as a passenger in a car being driven by her United States citizen friend.  According to the respondent's testimony, the immigration inspector asked her friend whether he was an American citizen but did not ask her anything.  The officer then waved the car through the port of entry.  The respondent married a United States citizen in January 2006, and she has an approved immediate relative visa petition, which is the basis for her adjustment of status application.[1]

In a Notice to Appear served on the respondent on August 22, 2005, the DHS charged her with removability under sections 212(a)(6)(A)(i) and (7)(A)(i) of the Act.  The respondent denied the charges, but the Immigration Judge found her to be removable on both grounds.  The Immigration Judge also found her to be statutorily ineligible for adjustment of status, because she had not been "admitted" to the United States within the meaning of section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2006).  Specifically, he held that section 101(a)(13)(A) requires that an alien be lawfully admitted to the United States, which requires a lawful basis to enter the country, as evidenced by a valid document that permits entry or parole.  He concluded that procedural regularity at the time of entry was insufficient.  The Immigration Judge further found that although the respondent had arguably been inspected, she had not been admitted and thus was statutorily ineligible to adjust status under section 245(a) as one who has been "inspected and admitted or paroled into the United States."

# II.  ISSUE

Under section 245(a) of the Act, an applicant for adjustment of status must have been "inspected and admitted or paroled into the United States."

---

[1] The respondent previously married her current husband in 2002, but it was later discovered that she had a legal impediment to contracting this marriage because she had never terminated her prior marriage to a Mexican citizen.  She subsequently divorced her Mexican husband in December 2005 and remarried her current United States citizen husband in January 2006.

Section 101(a)(13)(A) of the Act provides that the terms "admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." Therefore, in order to determine if the respondent is eligible for adjustment of status, we must decide whether she was inspected and "admitted" to the United States. To do so, we must decide whether she need only show procedural regularity in her entry to establish that she was "admitted" pursuant to section 101(a)(13)(A) of the Act, or whether she must prove compliance with substantive legal requirements.

## III. ANALYSIS

On appeal, the respondent argues that she was inspected and admitted to the United States for purposes of section 245(a) when she presented herself for inspection at the port of entry and the inspecting officer allowed her to enter the United States. She maintains that the term "admitted," as defined in section 101(a)(13)(A) of the Act, does not require her to have been lawfully entitled to enter the United States. Rather, she asserts that physically presenting herself for questioning constitutes an inspection, even if she volunteered no information and was not questioned by the immigration authorities. In support of her position, the respondent cites *Matter of Areguillin*, 17 I&N Dec. 308 (BIA 1980), where we interpreted the term "admitted," as it is used in section 245(a) of the Act, to denote only procedural regularity in an entry, not compliance with substantive legal requirements. She asserts that this interpretation remains valid and controlling in her case and that she therefore made a lawful entry into the United States after inspection and authorization. Accordingly, she seeks to have the record be remanded to give her an opportunity to apply for adjustment of status.

Following the respondent's appeal, we requested supplemental briefing from both parties on two issues. First, we requested the parties' views on the question whether, for purposes of adjustment of status under section 245(a) of the Act, the term "admitted" (as defined in section 101(a)(13)(A) of the Act to mean "lawful entry" into the United States) requires that an applicant, at the time of the claimed admission, be lawfully privileged or entitled to enter the United States. Second, we sought the parties' views on whether, in enacting section 101(a)(13)(A) of the Act in section 301(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-575 ("IIRIRA"), Congress intended to continue to allow aliens who physically presented themselves for questioning and were permitted to pass through the port of entry to have

satisfied the "inspected and admitted" requirement of section 245 of the Act.[2] On appeal, both parties agree that the term "admitted" in section 245(a) of the Act demands only procedural regularity in an entry, not compliance with substantive legal requirements, and they urge us to adopt that interpretation. In addition, the DHS argues that the respondent did not establish procedural regularity at the port of entry because she has not shown that she was admitted in a particular nonimmigrant or immigrant status.

For the following reasons, we agree with the parties that admission for purposes of adjustment of status under section 245(a) of the Act requires only procedural regularity.

### A. Legislative History of Adjustment of Status Provisions

As originally enacted, section 245(a) of the Act provided, in pertinent part, as follows:

> The status of an alien who was *lawfully admitted* to the United States as a *bona fide nonimmigrant* and who is *continuing to maintain that status* may be adjusted by the Attorney General in his discretion (under such regulations as he may prescribe to insure the application of this paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants) to that of an alien lawfully admitted for permanent residence [if certain requirements have been met].

Immigration and Nationality Act of June 27, 1952, ch. 477, § 245(a), 66 Stat. 163, 217 (emphasis added). Thus, the statute originally provided adjustment of status to aliens who were lawfully admitted to the United States as bona fide nonimmigrants and continued to maintain that status. *See Matter of Pires Da Silva*, 10 I&N Dec. 191, 192 (BIA 1963), *overruled on other grounds by Tibke v. INS*, 335 F.2d 42 (2d Cir. 1964), *and modified*, *Matter of Krastman*, 11 I&N Dec. 720 (BIA 1966).

Congress subsequently amended the statute in 1958 to provide as follows:

> The status of an alien who was *admitted* to the United States as a *bona fide nonimmigrant* may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence [if certain requirements have been met].

Act of Aug. 21, 1958, Pub. L. No. 85-700, 72 Stat. 699 (emphasis added). Thus, Congress dropped the requirement of lawful admission and maintenance of nonimmigrant status, but adjustment of status still remained available only

---

[2] Before the enactment of the IIRIRA, section 101(a)(13) of the Act defined an "entry" but not an "admission," and it did not state that an "entry" had to be lawful.

to aliens who had been admitted as bona fide nonimmigrants. *See Matter of Pires Da Silva*, 10 I&N Dec. at 192.

In 1960, Congress further amended section 245(a) of the Act to remove the requirement that an alien have been admitted as a bona fide nonimmigrant. The language of the statute was amended to read as follows:

> The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence [if certain requirements have been met].

Act of July 14, 1960, Pub. L. No. 86-648, § 10, 74 Stat. 504, 505; *see also Matter of Pires Da Silva*, 10 I&N Dec. at 192.

This 1960 amendment is significant because it replaced the requirement that the alien be admitted as a bona fide nonimmigrant, i.e., that an alien's admission be substantively lawful, with a requirement that the alien simply be inspected and admitted, i.e., that his or her admission be procedurally regular. In *Matter of Pires Da Silva*, 10 I&N Dec. at 192-94, we reviewed the legislative history and discussed the significance of the removal of the bona fide nonimmigrant requirement in the 1960 amendments. *See id.* at 192-93 (discussing section 10 of House Joint Resolution 397, which was enacted as the Act of July 14, 1960); *see also* S. Rep. No. 86-1651 at 10-12 (1960), *reprinted in* 1960 U.S.C.C.A.N. 3124, 3135-38, 1960 WL 4866. We noted that Congress expressed its intention to broaden the statute "so as to include all aliens (other than alien crewmen) who have been inspected and admitted or who have been paroled into the United States, thereby providing considerably more flexibility in the administration of the law." *Matter of Pires Da Silva*, 10 I&N Dec. at 193. We further commented as follows:

> The legislative history fails to reveal any discussion as to the nature of the "considerably more flexibility in the administration of the law" referred to above in connection with the enactment of the proposed amendment. . . . It is believed that the change in language may have been motivated by a series of Service decisions in which the bona fides of the nonimmigrant status of the aliens were questioned and resulted in holdings that aliens, who were not actually bona fide nonimmigrants and were in fact immigrants, were not eligible for adjustment of status. The elimination of the necessity of examining into the bona fides of the nonimmigrant status of persons who were inspected and admitted as nonimmigrants would provide the greater flexibility in the administration of the law referred to in the legislative history.

*Id.* at 193-94 (footnote omitted).

Thus, we held that an alien was not required to be admitted as a bona fide nonimmigrant in order to be "inspected and admitted." In other words, as long as an alien's entry into the United States as a nonimmigrant was procedurally

proper (i.e., the alien underwent an inspection by an immigration officer, who subsequently admitted the alien), the alien could seek adjustment of status under section 245(a).

*Matter of Areguillin*, 17 I&N Dec. 308, presented a factual scenario nearly identical to the one in this case. After considering the relevant statutes, we expressly rejected the notion that only an alien who had been "lawfully or legally" admitted to the United States could qualify for adjustment of status under section 245(a) of the Act. *Id.* at 310. Instead, we determined that an alien who had physically presented herself for questioning and made no knowing false claim of citizenship had satisfied the "inspected and admitted" requirement of section 245(a) of the Act. Thus, we interpreted the term "admitted" to denote only procedural regularity, not compliance with substantive legal requirements.

## B. Adjustment of Status After the IIRIRA

In light of the 1996 enactment of the current definition of the terms "admission" and "admitted" at section 101(a)(13)(A) of the Act, we are confronted with the question whether the interpretation we set forth in *Matter of Areguillin* in 1980 remains valid. Specifically, we must decide whether, in enacting the IIRIRA, Congress intended to continue to allow aliens who had presented themselves for inspection and were allowed to enter the United States to have satisfied the inspection and admission requirements for adjustment of status under section 245(a) of the Act.

We find that, by themselves, the terms "admitted" and "admission," as defined in section 101(a)(13)(A) of the Act, continue to denote procedural regularity for purposes of adjustment of status, rather than compliance with substantive legal requirements.[3] We held in *Matter of Areguillin*, 17 I&N Dec.

---

[3] We acknowledge that subsequent to the enactment of the IIRIRA in 1996, we issued a decision construing the related term "lawfully" to denote compliance with substantive legal requirements for purposes of section 101(a)(20) of the Act, 8 U.S.C. § 1101(a)(20) (2000), which defines the term "lawfully admitted for permanent residence." *See Matter of Koloamatangi*, 23 I&N Dec. 548 (BIA 2003). However, our holding in that case was limited to the specific situation presented by section 101(a)(20), which uses the phrase "lawfully admitted *for permanent residence*." (Emphasis added.) In *Matter of Koloamatangi*, 23 I&N Dec. at 550, we observed that pre-1996 Board decisions and decisions by the Federal courts of appeals found that the phrase "lawfully admitted for permanent residence" did not apply to aliens who had obtained their permanent resident status by fraud or had otherwise not been entitled to it. We found that the reasoning in those decisions remained sound and survived the 1996 amendments to the Act. *Id.* In contrast, we must now address the ambiguity created by Congress's use of the term "lawful"

(continued...)

at 310, that an admission occurs as long as it is procedurally regular. Specifically, we stated that an admission "occurs when the inspecting officer communicates to the applicant that he has determined that the applicant is not inadmissible." *Id.* at 310 n.6. We are not persuaded that section 101(a)(13)(A) of the Act, as enacted by the IIRIRA, abrogates our holding in *Matter of Areguillin*.

Initially, we find no indication that in enacting the current definition of the term "admitted" at section 101(a)(13)(A) of the Act, Congress intended to supersede the Board's long-standing interpretation of that term as it applies to the "inspected and admitted" requirement of section 245(a). Specifically, we find no evidence that in amending former section 101(a)(13) of the Act, Congress intended to reestablish, for purposes of demonstrating eligibility for adjustment of status, the former requirement that an alien's admission must comply with substantive legal requirements. On the contrary, as we indicated in *Matter of Pires Da Silva*, 10 I&N Dec. 191, by changing the law in 1960, Congress intended to establish that aliens who presented themselves for inspection and were allowed to enter the United States had satisfied the requirements for adjustment of status under section 245(a) of the Act. Furthermore, it has been well documented that Congress amended section 101(a)(13) of the Act simply to eliminate that aspect of the "entry doctrine" that permitted aliens who had entered without inspection to have greater procedural and substantive rights in deportation proceedings than those who had presented themselves for inspection at a port of entry and had been placed in exclusion proceedings. *See* H.R. Rep. No. 104-469I, at 225-26 (1996), 1996 WL 168955 (accompanying H.R. 2022); Memorandum from David Martin, INS General Counsel, to Michael L. Aytes, Ass't Comm'r, Office of Benefits (Feb. 19, 1997) (discussing, inter alia, the amendment to section 101(a)(13) of the Act), *reprinted in* 74 Interpreter Releases, No. 11, Mar. 24, 1997, app. II at 516-22.

A contrary interpretation of section 101(a)(13)(A) of the Act would attribute to Congress an intent to reinstate an additional requirement of substantive legal compliance for adjustment of status under section 245(a), despite the absence of any evidence of such congressional intent. It would also significantly affect the applicability of other statutory provisions of the Act. In this regard, when Congress amended former section 101(a)(13), it also amended section 237(a) to require that an alien be "*in and admitted* to the United States" in order to be subject to the various grounds of deportability.

---

(...continued)

to modify the term "entry" in section 101(a)(13)(A) of the Act, as that term is used to define "admitted" for purposes of adjustment of status under section 245(a).

(Emphasis added.) *See* IIRIRA § 301(d)(1), 110 Stat. at 3009-579 (striking "in the United States" and inserting "in and admitted to the United States"). However, section 237(a)(1)(A) of the Act renders deportable those aliens who, at the time of entry, are "within one or more of the classes of aliens *inadmissible* by the law existing at such time." (Emphasis added.) Thus, section 237 makes any alien who was in and admitted to the United States deportable if he was inadmissible at the time of entry. If the phrase "lawful entry" demanded a substantively lawful admission, this provision of the Act would be internally inconsistent, because an alien could not be both "admitted" and "inadmissible" at the time of entry.

Similarly, interpreting the term "admitted" in section 101(a)(13)(A) of the Act to require an entry to be in compliance with substantive legal requirements, rather than only with procedural regularity, would effectively render null section 237(a)(1)(H) of the Act, which provides a waiver of deportability that is expressly available to aliens who obtained admission by fraud or misrepresentation.[4] *See United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (noting that a "cardinal principle" of statutory construction is not to destroy parts of a statute, but rather to give effect, if possible, to every clause and word). The fact that Congress retained section 237(a)(1)(H) when it amended former section 101(a)(13) demonstrates that Congress understood that an "admission" could occur in the absence of compliance with substantive legal requirements. *See generally* IIRIRA § 305(a)(2), 110 Stat. at 3009-598 (redesignating former section 241 of the Act as current section 237 of the Act).

Finally, if an "admission" under section 101(a)(13)(A) of the Act were to require an entry in compliance with substantive legal requirements, the waiver of inadmissibility under section 212(h) would potentially become available to aliens who had procured lawful permanent residence by fraud and misrepresentation, in contravention of our holding in *Matter of Ayala*, 22 I&N Dec. 398 (BIA 1998) (stating that the statutory bar in section 212(h) applies to any alien who previously gained admission as a lawful permanent resident, notwithstanding any fraud or misrepresentation in procuring that admission).[5]

---

[4]  We have previously recognized that section 237(a)(1)(H) of the Act specifically contemplates that an alien may obtain admission either by fraud or by misrepresentation, whether innocent or not. *See Matter of Fu*, 23 I&N Dec. 985 (BIA 2006).

[5]  The United States Court of Appeals for the Ninth Circuit recently cited with approval our reasoning in *Matter of Ayala* and found that when section 101(a)(13)(A) of the Act is considered in the context of a waiver under section 212(h), it is clear that "Congress intended to define admission in procedural, rather than substantive, terms" for purposes of section 212(h) of the Act. *Hing Sum v. Holder*, 602 F.3d 1092, 1097 (9th Cir. 2010).

As previously noted, the DHS argues that while an "admission" under section 101(a)(13)(A) only requires procedural regularity, the evidence does not establish that the respondent's entry complied with such procedural regularity. According to the respondent's testimony, the immigration officer only spoke to the driver of the vehicle and allowed the vehicle to enter based on the driver's declaration of United States citizenship. The DHS asserts that the immigration officer essentially treated the respondent as a United States citizen and that she did not undergo an inspection and admission. Further, the DHS maintains that regardless of whether the immigration officer treated the respondent as a United States citizen, he did not ask her any questions and did not determine her admissibility. Thus, the DHS contends that because procedural regularity required the respondent to present herself before an immigration officer as an alien, she did not make a lawful entry into the United States after inspection and authorization and therefore was not properly "admitted."

It is true that an immigration officer is not empowered to inspect a citizen in the same manner as an alien. An alien who enters the United States under a false claim of United States citizenship has not been inspected and is not eligible for adjustment of status under section 245 of the Act. *See, e.g.*, *Reid v. INS*, 492 F.2d 251, 255 (2d Cir. 1974); *Matter of S-*, 9 I&N Dec. 599, 600 (BIA 1962). However, according to the Immigration Judge, the facts were undisputed that the respondent presented herself for inspection, and he made no finding that she falsely claimed to be a United States citizen. Thus, the controlling law is *Matter of Areguillin*, 17 I&N Dec. 308, which held that an alien who physically presents herself for questioning and makes no knowing false claim to citizenship is "inspected," even though she volunteers no information and is asked no questions by the immigration authorities, and that such an alien has satisfied the "inspected and admitted" requirement of 245(a) of the Act. *See also Matter of G-*, 3 I&N Dec. 136, 138 (BIA 1948) (holding that an alien who physically presents himself for questioning, regardless of whether he is asked any questions, has been "inspected").

The DHS has offered no support for its assertion that the respondent must be admitted in a particular "status" in order for procedural regularity to be found. We therefore conclude that the respondent made a lawful entry into the United States after inspection and authorization by an immigration officer within the meaning of section 101(a)(13)(A) of the Act and that she is not removable under section 212(a)(6)(A)(i). Furthermore, because the respondent was thus "admitted" to the United States, she is eligible for adjustment of status under section 245(a) of the Act. Accordingly, the respondent's appeal will be sustained and the record will be remanded for adjudication of her application for that relief.

**ORDER:**  The appeal is sustained.

**FURTHER ORDER:**  The decision of the Immigration Judge is vacated, and the record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision.


*CONCURRING OPINION*:  Lauri Steven Filppu, Board Member

I respectfully concur in the majority's conclusion that an "admission" only requires a procedurally lawful entry.

The respondent seeks adjustment of status.  But she is only eligible for that relief if she was "admitted," as that term is defined by section 101(a)(13)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(A) (2006).  The majority focuses on the specific history of adjustment of status under section 245 of the Act and the anomaly that would arise if being "admitted" to the United States required a substantively lawful admission.  This is obviously relevant, but "admitted" is a defined term.  Our focus at the outset needs to be on the language of section 101(a)(13)(A) itself, which provides:

> The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

The starting point in statutory construction is the language of the statute.  *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984).  Clear and unambiguous language must be given effect, except in rare cases such as where doing so would "produce a result 'demonstrably at odds with the intentions of its drafters.'" *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

In isolation, the "lawful entry" provision of the definition would most naturally be understood to demand a *substantively* lawful entry, especially as a *procedurally* lawful entry is separately signified by the requirement of an "inspection and authorization by an immigration officer."  But the meaning and clarity of statutory language should be assessed in the context in which it is used, not in isolation.  *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); *Beecham v. United States*, 511 U.S. 368, 372 (1994).  As defined terms, the words "admission" and "admitted" only take on life in the provisions in which they are employed.

The Department of Homeland Security ("DHS") argues that within the context of the statute as a whole, the word "lawful" in section 101(a)(13)(A)

does not demand a substantively lawful entry. Instead, it simply reinforces the statute's "inspection and authorization" language, making it clear that an admission cannot be accomplished by an entry that procedurally evades inspection. *See Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010) (determining that an "admission" only requires a procedurally lawful entry, not a substantively lawful entry). While this reading of the word "lawful" is not the most natural reading, I agree with the majority that it is the reading that emerges from an overall examination of the statute.

In particular, I find persuasive the portions of the majority opinion's analyzing the use of the term "admission" in the contexts of sections 212(h) and 237(a)(1)(A) and (H) of the Act, 8 U.S.C. §§ 1182(h) and 1227(a)(1)(A) and (H) (2006). I agree that those statutory sections would essentially be rendered meaningless or would operate in ways not envisioned by Congress if we were to construe an admission as requiring legal compliance with the substantive provisions of the statute. As explained by the majority, the legislative history reflects that Congress added the definition of admission to replace certain aspects of the "entry doctrine," under which aliens who had entered the United States without inspection gained privileges in immigration proceedings that were not available to aliens who presented themselves for inspection at a port of entry. H.R. Rep. No. 104-469(I), at 225-26 (1996), 1996 WL 168955.[1]

Our construction of the terms "admission" and "admitted" to demand only a procedurally lawful entry does give limited meaning to the word "lawful," but it is the interpretation most in keeping with the overall structure and sound operation of the statute as a whole. Accordingly, I agree that an alien can be "admitted" even if he or she is substantively inadmissible at the time of the entry in question.

---

[1] The interpretation we adopt here is consistent with the approach we took in *Matter of Ayala*, 22 I&N Dec. 398 (BIA 1998). But I fail to see how concerns over undermining that 1998 decision should influence our reading of what was intended by a 1996 legislative enactment. What is relevant is how the term "admitted" best operates in the section 212(h) context, and to that extent *Ayala* does support our present interpretation.