# Matter of Patricia PINZON, Respondent

*Decided August 19, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  An alien who enters the United States by falsely claiming United States citizenship is not deemed to have been inspected by an immigration officer, so the entry is not an "admission" under section 101(a)(13)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(A) (2012).

(2)  The offense of knowingly and willfully making any materially false, fictitious, or fraudulent statement to obtain a United States passport in violation of 18 U.S.C. § 1001(a)(2) (2006) is a crime involving moral turpitude.

FOR RESPONDENT:  Linda Osberg-Braun, Esquire, Miami, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Margaret Nocero, Assistant Chief Counsel

BEFORE:  Board Panel:  GRANT, MALPHRUS, and MULLANE, Board Member.

GRANT, Board Member:

In a decision dated March 28, 2008, an Immigration Judge found the respondent removable, pretermitted her application for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2006), and granted her request for voluntary departure.  The respondent has appealed from that decision.  The Department of Homeland Security ("DHS") has filed a cross-appeal from the Immigration Judge's grant of voluntary departure.  The respondent's appeal will be dismissed.  The DHS's appeal will be sustained and the respondent will be ordered removed from the United States.

## I.  FACTUAL AND PROCEDURAL HISTORY

It is undisputed that the respondent is a native and citizen of Venezuela who first entered the United States in 1982 with a student visa.  In 1985, she was issued a United States passport, which she applied for by presenting a false birth certificate from Florida.  In 1997, the respondent applied for and was issued a renewal of the passport through the mail.

According to the Immigration Judge, the respondent also falsely represented that she was a United States citizen when she registered to vote.

The respondent last entered the United States on August 20, 2001, by presenting the United States passport that she procured with a false birth certificate. She was subsequently convicted in November 2002 of knowingly and willfully making false, fictitious, or fraudulent statements and representations to the Department of State in violation of 18 U.S.C. § 1001(a)(2) (2000). The respondent was placed in removal proceedings and was charged under sections 212(a)(2)(A)(i)(I), (6)(A)(i), (C)(i), and (ii) of the Act, 8 U.S.C. §§ 1182(a)(2)(A)(i)(I), (6)(A)(i), (C)(i), and (ii) (2006), as an alien who was convicted of a crime involving moral turpitude, who was present in the United States without being admitted or paroled, who has procured immigration benefits by fraud or willful misrepresentation of a material fact, and who has made a false claim of United States citizenship, respectively.

The Immigration Judge sustained all charges of removability against the respondent. He also pretermitted her application for cancellation of removal under section 240A(b)(1) of the Act, finding that she could not establish 10 years of continuous physical presence because of her commission of a crime involving moral turpitude. He further concluded that she was barred from showing statutory eligibility based on her conviction. However, the Immigration Judge granted her request for voluntary departure.

On appeal, the respondent argues that the Immigration Judge erred in sustaining the charges of inadmissibility against her under section 212(a) of the Act, because she should have been charged instead as a deportable alien under section 237(a) of the Act, 8 U.S.C. § 1227(a) (2006). The respondent also challenges the Immigration Judge's decision to pretermit her application for cancellation of removal under section 240A(b)(1) of the Act, contesting his determination that she was convicted of a crime involving moral turpitude. The DHS has appealed from the Immigration Judge's decision to grant the respondent voluntary departure.

## II. ANALYSIS

### A. Admission

There is no meaningful dispute regarding the Immigration Judge's finding that the respondent last entered the country on August 20, 2001, by presenting a United States passport that she procured by submitting a false birth certificate from Florida. Contrary to the respondent's assertions, her initial lawful entry into the United States with a student visa in 1982 did not

convert her subsequent reentries into the country, which were facilitated by the presentation of her United States passport, into "admissions." *See* section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2012) (providing that the term "admission" means "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer").

Subsequent to the Immigration Judge's decision, we held in *Matter of Quilantan*, 25 I&N Dec. 285, 290 (BIA 2010), that an alien is "admitted" pursuant to section 101(a)(13)(A) of the Act if his or her entry is shown to have been procedurally regular, that is, "the alien underwent an inspection by an immigration officer, who subsequently admitted the alien." However, in that decision, we also reaffirmed *Matter of Areguillin*, 17 I&N Dec. 308, 309 n.3 (BIA 1980), where we stated that an alien who gains admission to the United States upon a knowing false claim to citizenship cannot be deemed to have been "inspected and admitted."

The Supreme Court has recognized that a United States citizen is not subject to the same scrutiny and requirements as an alien during the process of inspection and admission. *Reid v. INS*, 420 U.S. 619, 624–25 (1975). Immigration authorities more closely examine the right of aliens to enter the country and they require and obtain information and records, such as fingerprints and registration forms, to help keep track of aliens who have been admitted after they have entered the country. *Id.* at 625. Aliens who enter by falsely claiming to be a United States citizen significantly frustrate the process for inspecting incoming aliens and effectively put themselves in a position that is "comparable to that of a person who slips over the border and who has, therefore, clearly not been inspected." *Id.* (quoting *Goon Mee Heung v. INS*, 380 F.2d 236, 237 (1st Cir. 1967)) (internal quotation marks omitted).

Moreover, we noted in *Quilantan*, 25 I&N Dec. at 293, that an immigration officer is not empowered to inspect a United States citizen in the same manner as an alien. Acknowledging this difference in treatment between citizens and aliens, we held there that an alien who entered the United States under a false claim of United States citizenship cannot be considered to have been inspected. *Id.* (citing *Reid v. INS*, 492 F.2d 251, 255 (2d Cir. 1974); *Matter of S-*, 9 I&N Dec. 599, 600 (BIA 1962)).

We find no reason to diverge from the long-standing rule that an alien who enters the United States by falsely claiming United States citizenship effectively eludes the procedural regularity of inspection by an immigration officer. *See Reid v. INS*, 420 U.S. at 624–25; *Matter of F-*, 9 I&N Dec. 54 (Reg'l Comm'r, Ass't Comm'r 1960) ("It is well established that aliens who knowingly made a false claim to United States citizenship for the purpose of evading inspection under the immigration laws gained entry

without inspection." (citations omitted)); *Matter of E-*, 6 I&N Dec. 275 (BIA 1954). We therefore hold that such an entry does not constitute an admission as that term is defined in section 101(a)(13)(A) of the Act.

The Immigration Judge properly denied the respondent's motion to terminate removal proceedings based on her argument that she should be subject to the deportability grounds under section 237(a) of the Act rather than inadmissibility grounds under section 212(a). Moreover, we agree with the Immigration Judge that the respondent is removable as an alien who is inadmissible under sections 212(a)(6)(A)(i), (C)(i), and (ii) of the Act.

## B. Crime Involving Moral Turpitude

The respondent argues that the Immigration Judge erred in pretermitting her application for cancellation of removal based on his finding that her conviction was for a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act. The respondent was convicted under 18 U.S.C. § 1001(a)(2), which, at the time of her 2002 conviction, provided in pertinent part as follows:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
> . . .
> (2) makes any materially false, fictitious, or fraudulent statement or representation . . .
> . . .
> shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1001(a)(2).

The respondent bears the burden of establishing both that she is not inadmissible to the United States under section 212(a)(2)(A)(i)(I) of the Act and that she is statutorily eligible for cancellation of removal under section 240A(b)(1). 8 C.F.R. § 1240.8(c)–(d) (2013). She therefore must show that she has not been convicted of a crime involving moral turpitude. We have considered the respondent's arguments and conclude that she has not satisfied her burden of proof.

The respondent argues that the minimum conduct required for a conviction under 18 U.S.C. § 1001(a)(2) is making a false statement to a Government official, which she contends does not involve moral turpitude. According to the respondent, unlike the act of providing a "fraudulent" statement, making a "false" statement does not involve moral turpitude

because it requires no evil intent.  We are unpersuaded by her attempt to make this distinction.

The United States Court of Appeals for the Eleventh Circuit, in whose jurisdiction this case arises, has held that for purposes of 18 U.S.C. § 1001(a)(2), "the word 'false' requires an intent to deceive or mislead." *United States v. Boffil-Rivera*, 607 F.3d 736, 741 (11th Cir. 2010).  The Eleventh Circuit has also recently reaffirmed that proof of a specific intent to deceive by making a false or fraudulent statement is a prerequisite for a conviction under § 1001.  *United States v. House*, 684 F.3d 1173, 1203 (11th Cir. 2012) (citing *United States v. Dothard*, 666 F.2d 498, 503 (11th Cir. 1982)).

The respondent also suggests that a conviction can be obtained under § 1001(a)(2) even if the misrepresentation was not material.  However, this is contrary to the plain language of the statute, which includes as an element of the offense the requirement that the offender made a "*materially* false, fictitious, or fraudulent statement or representation."   18 U.S.C. § 1001(a)(2) (emphasis added); *see also United States v. Boffil-Rivera*, 607 F.3d at 740; *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996).  The Eleventh Circuit has held that a statement is "material" under § 1001(a)(2) if it has a "natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed."   *United States v. Boffil-Rivera*, 607 F.3d at 741 (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)) (internal quotation marks omitted).  The court found that the Government need not prove that the statement had actual influence, only that "[t]he false statement must simply have the capacity to impair or pervert the functioning of a government agency."  *Id.* (quoting *United States v. Lichenstein*, 610 F.2d 1272, 1278 (5th Cir. 1980)) (internal quotation marks omitted); s*ee also Matter of D-R-*, 25 I&N Dec. 445, 450 (BIA 2011).

We find no merit to the respondent's assertions, even if we accept her proposition that she was only convicted of making a materially false statement or representation, which she claims is the least culpable conduct required for a conviction under § 1001(a)(2).  To obtain a conviction, the Government was required to show that she made a false statement that had the capacity to impair or pervert the functioning of a Government agency and that the statement was made with the intent to deceive or mislead.  We have long held that crimes involving fraud or making false statements involve moral turpitude.  *See Matter of Correa-Garces*, 20 I&N Dec. 451, 454 (1992) ("Convictions for making false statements have been found to involve moral turpitude."); *see also Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude.").

Moreover, an offense that involves impairing or obstructing a function of the Government by deceit, graft, trickery, or dishonest means is a crime involving moral turpitude. *See Omagah v. Ashcroft*, 288 F.3d 254, 262 (5th Cir. 2002) (stating that "intentionally deceiving the government involves moral turpitude"); *Matter of Jurado* 24 I&N Dec. 29, 35 (BIA 2006) (holding that making unsworn falsifications to authorities is a crime involving moral turpitude); *Matter of Flores*, 17 I&N Dec. 225, 230 (BIA 1980) (holding that the "crime of uttering or selling false or counterfeit paper relating to registry of aliens with knowledge of their counterfeit nature" involves moral turpitude, because it "inherently involves a deliberate deception of the government and an impairment of its lawful functions"). We therefore conclude that the minimum conduct criminalized by 18 U.S.C. § 1001(a)(2) involves moral turpitude.

The respondent has cited cases from the Ninth Circuit in support of her argument that making a false statement does not involve moral turpitude. However, as previously discussed, her case arises in the Eleventh Circuit, which has determined that an intent to deceive or mislead is a required element for a conviction under § 1001(a)(2).

Moreover, the decisions the respondent relies on addressed an earlier version of 18 U.S.C. § 1001 and are therefore distinguishable. *Hirsch v. INS*, 308 F.2d 562 (9th Cir. 1962); *Matter of Marchena*, 12 I&N Dec. 355 (Reg'l Comm'r 1967); *Matter of Espinosa*, 10 I&N Dec. 98 (BIA 1962); *Matter of G-*, 8 I&N Dec. 315 (BIA 1959). In 1996, § 1001 was amended to explicitly add the element of materiality to each clause of the statute, including the one under which the respondent was convicted. False Statements Accountability Act of 1996, Pub. L. No. 104-292, § 2, 110 Stat. 3459, 3459 (effective Oct. 11, 1996).[1] Thus, § 1001(a)(2) now criminalizes the making of any materially false, fictitious, or fraudulent statement or representation. Consequently, an important issue that was raised in the earlier rulings as to whether materiality necessarily inheres in all parts of § 1001 is no longer in question.

---

[1] Prior to October 11, 1996, 18 U.S.C. § 1001 (1994) provided as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

The Seventh Circuit, which specifically addressed whether the amended version of § 1001 proscribes a crime involving moral turpitude, has unequivocally stated, "There can be no question that a violation of section 1001 is a crime involving moral turpitude." *Ghani v. Holder*, 557 F.3d 836, 840 (7th Cir. 2009). Moreover, the Seventh Circuit noted that almost every court that has considered the issue has concluded that crimes involving willful false statements are turpitudinous. *Id.* at 840–41.

In sum, we conclude that the respondent's 2002 conviction for violating 18 U.S.C. § 1001(a)(2) is for a crime involving moral turpitude. The Immigration Judge properly found that the respondent is inadmissible under section 212(a)(2)(A)(i)(I) of the Act and that she is therefore also precluded from establishing statutory eligibility for cancellation of removal under section 240A(b)(1). *See* section 240A(b)(1)(C) of the Act. Accordingly, the respondent's appeal will be dismissed.

## C. Voluntary Departure

The DHS first argues that the respondent is ineligible for voluntary departure under section 240B(a)(1) of the Act, 8 U.S.C. § 1229c(a)(1) (2012), which is the type that may only be granted prior to the completion of removal proceedings, because she did not concede removability, did not withdraw her application for cancellation of removal, and did not waive her right to appeal. *See Matter of C-B-*, 25 I&N Dec. 888, 891–92 (BIA 2012); *Matter of Arguelles*, 22 I&N Dec. 811, 815–17 (BIA 1999); 8 C.F.R. § 1240.26(b)(1)(i)(B)–(D) (2013). It is not clear whether the Immigration Judge intended to grant the respondent voluntary departure under section 240B(a)(1), but any such grant would be improper for the reasons advanced by the DHS.[2]

However, an alien may be eligible for voluntary departure under section 240B(b)(1) of the Act at the conclusion of removal proceedings if certain statutory requirements for eligibility are met and the alien is deserving of relief as a matter of discretion. *See Matter of Arguelles*, 22 I&N Dec. at 816–17. The Immigration Judge found no statutory bars to voluntary departure in this case and concluded that the respondent merited a grant of relief in the exercise of discretion. The DHS argues that this favorable exercise of discretion was unwarranted.

The Immigration Judge's factual findings regarding the positive and negative factors in the respondent's case are not clearly erroneous.

---

[2] Despite the Immigration Judge's error, given our determination that the respondent does not merit a grant of voluntary departure in the exercise of discretion, we find no reason to remand the record.

*See* 8 C.F.R. § 1003.1(d)(3)(i) (2013). However, upon our de novo review of these facts, we conclude that the adverse factors in this case outweigh the respondent's equities and that she therefore does not merit a favorable exercise of discretion. *See* 8 C.F.R. § 1003.1(d)(3)(ii).

In exercising discretion on a voluntary departure application, we weigh the applicant's equities against such factors as his or her immigration history, the nature of all entries, any violations of the immigration and other laws, and evidence of unfavorable conduct, including criminal conduct that has not culminated in a final conviction for purposes of the Act. *Matter of Thomas*, 21 I&N Dec. 20, 22–23 (BIA 1995). The respondent's equities include her family ties in the United States, her positive contribution to the community, and her payment of taxes. However, as the Immigration Judge found, the respondent procured a United States passport by fraud and she used the fraudulent passport to gain multiple entries into the United States and to register to vote. *See generally Matter of Barcenas-Barrera*, 25 I&N Dec. 40, 44 (BIA 2009) (discussing benefits afforded by a United States passport). These are very significant adverse factors, which weigh heavily against a discretionary grant of the privilege of voluntary departure.

We are not persuaded that the respondent's equities outweigh the very serious adverse factors of her protracted and repeated fraudulent conduct arising from her false claim of United States citizenship. This conduct reflects a clear willingness to violate the immigration laws and circumvent lawful authority. *See Matter of Rojas*, 15 I&N Dec. 492, 493 (BIA 1975) (finding that the manner in which an alien gains entry is relevant to the exercise of discretion in adjudicating an application for voluntary departure). Accordingly, we will sustain the DHS's appeal, vacate the Immigration Judge's grant of voluntary departure, and order the respondent removed from the United States.

**ORDER:** The respondent's appeal is dismissed.

**FURTHER ORDER:** The appeal of the Department of Homeland Security is sustained, and the Immigration Judge's grant of voluntary departure is vacated.

**FURTHER ORDER:** The respondent is ordered removed from the United States to Venezuela.