**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2209**

YERSON MAURICIO-VASQUEZ,

       Petitioner,

    v.

MATTHEW G. WHITAKER, Acting Attorney General; UNITED STATES OF AMERICA,

       Respondents.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 25, 2018               Decided: December 6, 2018

Before NIEMEYER, DIAZ, and FLOYD, Circuit Judges.

Petition for review granted; vacated and remanded with instructions by published opinion. Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Floyd joined.

**ARGUED:** Madeline Jean Cohen, WILEY REIN LLP, Washington, D.C., for Petitioner. Dawn S. Conrad, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Adina Appelbaum, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C.; P. Nicholas Peterson, WILEY REIN LLP, Washington, D.C., for Petitioner. Chad A. Readler, Acting Assistant Attorney General, Mary Jane Candaux, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

DIAZ, Circuit Judge:

Yerson Jack Mauricio-Vasquez is a lawful permanent resident of the United States and a native and citizen of Peru. Before us is his petition for review of the determination by the Board of Immigration Appeals that he is removable under the Immigration and Nationality Act (the "INA") based on his commission of a crime involving moral turpitude within five years of his admission to the United States.

The Board found that the Department of Homeland Security ("DHS") proved by clear and convincing evidence that Mauricio-Vasquez's date of admission was in 2008, less than five years before he committed Virginia felony abduction in 2012. We disagree, and therefore grant Mauricio-Vasquez's petition for review, vacate the order of removal, and remand to the agency with instructions to grant Mauricio-Vasquez's motion to terminate removal proceedings.

I.

A.

DHS began removal proceedings against Mauricio-Vasquez in January 2016, charging that he was removable under Section 237(a)(2)(A)(i) of the INA, 8 U.S.C. § 1227(a)(2)(A)(i).[1] A noncitizen is removable under that section if he is convicted of a crime involving moral turpitude committed within five years after his date of admission.

---

[1] DHS also charged that Mauricio-Vasquez was removable under INA Section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). A noncitizen is removable under this section if he is convicted of an aggravated felony at any time after admission. The INA (Continued)

There is no dispute that Mauricio-Vasquez was convicted on July 12, 2013 of felony abduction in violation of Va. Code Ann. § 18.2-47, and that he committed the offense on September 13, 2012. What is in dispute is Mauricio-Vasquez's date of admission to the United States, which in turn determines whether DHS met its burden to prove by clear and convincing evidence that he committed felony abduction within five years of his admission.[2]

Before turning to the record evidence, some legal context is in order. Under the Board's precedent, a noncitizen is "admitted" to the United States for purposes of the INA when she enters with "procedural regularity" by physically presenting herself at a port of entry for inspection and questioning by an immigration official. *Matter of Quilantan*, 25 I. & N. Dec. 285, 293 (B.I.A. 2010). Critical to this case is that procedural regularity doesn't require entry on a particular visa or status. *Id.* In *Quilantan* for example, the noncitizen was allowed by immigration authorities to pass through a port of entry as a passenger in a car without answering questions or providing any visa or travel documents. *Id.* at 286. The Board there concluded that the noncitizen entered the United

---

defines "aggravated felony" to include felony crimes of violence as defined at 18 U.S.C. § 16(b). *See* 8 U.S.C. § 1101(a)(43)(F). The Board found that Virginia felony abduction meets this definition. However, the Supreme Court subsequently held that the definition in 18 U.S.C. § 16(b) is unconstitutionally vague. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018). DHS has conceded (and we agree) that Mauricio-Vasquez is no longer removable under Section 237(a)(2)(A)(iii).

[2] The parties also dispute whether Virginia felony abduction is a crime involving moral turpitude. In light of our disposition, we do not reach this issue.

States "after inspection and authorization by an immigration officer" and was therefore admitted for purposes of the INA. *Id.* at 293.

If, however, a noncitizen enters without inspection but subsequently adjusts her status to that of lawful permanent resident, the date of her status adjustment is considered her date of admission. *Matter of Alyazji*, 25 I. & N. Dec. 397, 408 n.9 (B.I.A. 2011).

B.

DHS contends that Mauricio-Vasquez last entered the United States without inspection in October 2000. Because such an entry doesn't qualify as an admission under the INA, this would mean Mauricio-Vasquez wasn't admitted to the United States until he adjusted his status to lawful permanent resident in 2008. Therefore, on DHS's theory, Mauricio-Vasquez committed the 2012 felony abduction offense within the five-year window for removal.

At a hearing before an Immigration Judge, DHS introduced Mauricio-Vasquez's 2006 Application to Adjust Status (Form I-485), which states that he last arrived in the United States in October 2000 without inspection. DHS also tendered Mauricio-Vasquez's Record of Deportable/Inadmissible Alien (Form I-213), which shows that he was denied two visas in 2000.

Mauricio-Vasquez contends that he was admitted in 2002—ten years before he committed felony abduction—when he presented himself for inspection at Reagan National Airport. He asserts that the 2000 date of last arrival listed on his Form I-485 is incorrect. He states that an attorney filled out the form on his behalf after talking to his parents, who don't speak English.

4

In response to DHS's evidence, Mauricio-Vasquez submitted declarations from his mother, his aunt, and his mother's cousin describing his entry and admission in 2002. According to these declarations, Mauricio-Vasquez's mother entered the United States in 2000 without inspection near Phoenix, Arizona, while Mauricio-Vasquez remained in Peru with his aunts and grandmother. After Mauricio-Vasquez broke his elbow in 2001 at the age of eight, his mother decided that he should come to live with her in Virginia. His aunts helped make his travel arrangements and process his visa application in Peru, and he flew into Reagan National Airport in February 2002.

The Immigration Judge held that DHS had not shown by clear and convincing evidence that Mauricio-Vasquez committed felony abduction within five years after his date of admission. The judge noted that although it remained unclear which visa Mauricio-Vasquez used to enter the United States in 2002, he had "provided reasonable explanations for why his adjustment application makes no mention of a 2002 entry via visa, including his young age at the time of application and reliance on a third-party preparer." A.R. 347. Accordingly, the judge held that Mauricio-Vasquez was not removable under Section 237(a)(2)(A)(i).

On appeal, the Board determined that it was unable to meaningfully review this holding "[a]bsent affirmative factual determinations concerning [Mauricio-Vasquez's] last admission to the United States." A.R. 229–30. It therefore remanded the case for further factfinding.

On remand, Mauricio-Vasquez testified about his experience traveling to the United States in 2002, and the judge found this testimony credible. He described going

5

to Lima so that his aunt and his godmother could arrange for his travel to the United States. A few nights later, he and his godmother boarded a flight to the United States. When they arrived at the airport in the United States, they stood in a long line where people were going up to glass booths, and Mauricio-Vasquez watched his godmother hand over documents and answer questions. They took a second flight to Virginia and, after waiting in line at the airport again, went to a friend's house where Mauricio-Vasquez's mother met them.

Mauricio-Vasquez also offered additional documentary evidence, including school records showing that he attended school in Peru from 1999 to 2001, and enrolled in school in Virginia in February 2002 after undergoing the physical examination required for new students. And he submitted medical records showing that he was hospitalized in Peru in 2001 for treatment of a broken elbow.

This time around, the Immigration Judge concluded that DHS had shown by clear and convincing evidence that Mauricio-Vasquez was admitted in 2008, and that he was thus removable under Section 237(a)(2)(A)(i). Central to this finding was the judge's determination that Mauricio-Vasquez had not established which visa or travel documents he used to enter the United States in 2002. The judge described this as one of the "key questions the Court is tasked with answering on remand." *Id.* The judge also determined that the declaration of Mauricio-Vasquez's mother was due limited weight because she had not testified at hearing, even though she was available and the judge had requested that she testify. *Id.* According to the judge, Mauricio-Vasquez's "rebuttal evidence on remand is not enough to overcome the evidence submitted by DHS." *Id.* at 95–96.

6

Mauricio-Vasquez appealed, arguing that the Immigration Judge (1) impermissibly shifted the burden of proof regarding his admission date to him, and (2) erred by requiring evidence that he entered with a particular visa, even though any entry with procedural regularity counts as an admission.

The Board concluded that the Immigration Judge applied the correct burden of proof and properly weighed Mauricio-Vasquez's rebuttal evidence in determining whether DHS had satisfied its burden. According to the Board, the adjustment application supported DHS's contention that Mauricio-Vasquez was admitted in 2008, and Mauricio-Vasquez had not presented sufficient evidence to establish that the application was unreliable. The Board also held that the Immigration Judge acted within his discretion by requiring evidence about which visa or travel documents Mauricio-Vasquez used to enter the United States in 2002 to corroborate his version of events.

This petition followed.

II.

We consider a single question: Whether the Immigration Judge and the Board correctly determined, by clear and convincing evidence, that Mauricio-Vasquez was admitted to the United States in 2008. We review this finding of fact for substantial evidence, meaning that it is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ai Hua Chen v. Holder*, 742 F.3d 171, 178 (4th Cir. 2014) (quoting 8 U.S.C. § 1252(b)(4)(B)).

7

In these proceedings, DHS bore the burden of proving every element of Mauricio-Vasquez's removability by clear and convincing evidence. 8 U.S.C § 1229a(c)(3)(A); *Salem v. Holder*, 647 F.3d 111, 114 (4th Cir. 2011); 8 C.F.R. § 1240.8(a). To meet this "heavy burden," DHS's evidence needed to produce "a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established," or "prove[] the facts at issue to be highly probable." *Shaw v. Sessions*, 898 F.3d 448, 458 (4th Cir. 2018) (quoting *United States v. Watson*, 793 F.3d 416, 420 (4th Cir. 2015)).

One element of removability under INA Section 237(a)(2)(A)(i) is commission of a crime involving moral turpitude *within five years of admission*. DHS's theory of when Mauricio-Vasquez was admitted depends on its assertion that he last entered the United States without inspection in October 2000. On its view, because that entry wasn't a lawful admission, the five-year clock for removability under Section 237(a)(2)(A)(i) did not begin to run until Mauricio-Vasquez adjusted his status in 2008. The only evidence that DHS offered on the point was Mauricio-Vasquez's Form I-485 application for adjustment of status, which purported to show that he last entered the United States without inspection in 2000.[3] That evidence is suspect for at least two reasons.

---

[3] DHS also presented evidence showing that Mauricio-Vasquez was denied two visas in 2000. This evidence does nothing to affirmatively show that Mauricio-Vasquez last entered in 2000. At most, it tends to rebut Mauricio-Vasquez's claim that he entered in 2002 on a visa, if we accept that the records submitted by DHS provide an exhaustive history of his visa applications. But as we explain, Mauricio-Vasquez bore no burden to prove any particular account of his entry, much less that he entered on a visa.

First, Mauricio-Vasquez offered what the Immigration Judge deemed "reasonable explanations" for why the information on the form may have been inaccurate, including that (1) he was thirteen years old at the time of application, (2) he relied on his parents and an attorney to fill out the form, (3) his parents didn't speak English, and (4) his date of last entry may have been confused with that of his mother, who was also applying for adjustment of status. A.R. 377, 229. Second, and more importantly, Mauricio-Vasquez offered unrebutted evidence (in the form of school and medical records) showing that he was in Peru from 1999 to 2001.

Simply put, if Mauricio-Vasquez was in Peru from 1999 to 2001, DHS's theory that he last entered the United States in 2000 can't be correct. And neither the Immigration Judge nor the Board expressed doubt about the reliability of Mauricio-Vasquez's school and medical records. In fact, the Board appeared to accept that "[Mauricio-Vasquez] was previously in Peru and at some point entered this country and enrolled in elementary school in Virginia in February 2002." *In re: Mauricio-Vasquez*, 2017 WL 4946917, at *3 (B.I.A. Sept. 14, 2017). In the Board's view, however, that evidence did "not establish that he was admitted to the United States in 2002 on a visa, as he claimed." *Id.*

We conclude that the Board misapprehended the relevance of this evidence. The records don't simply show that Mauricio-Vasquez was "previously in Peru," but that he was in Peru *in 2001*, thus flatly contradicting DHS's theory that he last entered the United States without inspection in 2000.

9

Despite this fatal contradiction, the Immigration Judge and the Board required Mauricio-Vasquez to corroborate his contention that he entered the United States on a visa in 2002. They likened this corroboration requirement to the evidentiary requirements imposed upon noncitizens in other contexts, such as applications for relief from removal. *See id.* (citing 8 U.S.C. § 1229a(c)(4)(B); *Singh v. Holder*, 699 F.3d 321, 332 (4th Cir. 2012)); A.R. 95 (citing *In re: Fonseca-Haro*, 2014 WL 3697753, at *l (B.I.A. May 27, 2014)); A.R. 377 (citing 8 C.F.R. § 103.2(b)(2)(i)).

But here, unlike those other contexts, the noncitizen is not seeking relief; rather DHS is seeking an affirmative finding of removability "in the case of an alien who has been admitted to the United States."[4] 8 U.S.C. § 1229a(c)(3)(A); *see Salem*, 647 F.3d at 116 ("Congress has commanded that the government sustain the burden of establishing removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A). But at the relief stage . . . the statute shifts the burden to the removable noncitizen . . . . *Id.* § 1229a(c)(4)(A)(i)."). While it may be appropriate in some contexts to presume, absent evidence establishing the date and circumstances of a noncitizen's entry, that his date of

---

[4] For example, the cited passage in *Singh* concerns an immigration judge's discretion to require corroboration when making credibility determinations as to applicants for asylum and withholding of removal. And *Fonseca-Haro* involved a noncitizen charged with being present without first being admitted. 2014 WL 3697753, at *1. In that circumstance, 8 U.S.C. § 1229a(c)(2) places the burden on the noncitizen to establish that he is either lawfully present pursuant to an admission or entitled to admission. Here, by contrast, Mauricio-Vasquez's permanent resident status puts the fact of his admission beyond dispute. The only dispute concerns the *date* of his admission, which is *not* addressed by 8 U.S.C. § 1229a(c)(2), and which, as an element of removability, *is* controlled by 8 U.S.C. § 1229a(c)(3)(A) (placing the evidentiary burden on DHS).

admission is the date when he adjusts status, we hold that DHS is entitled to no such presumption where it bears the burden to prove its charge of removability, and where the date of admission constitutes an element of that charge.

It was DHS's burden to affirmatively prove (by clear and convincing evidence) that Mauricio-Vasquez last entered in 2000 without inspection, and was therefore not admitted until 2008, because this determines whether his 2012 felony abduction offense fell within the five-year window for removability. But here, the record contains essentially unrebutted evidence showing that Mauricio-Vasquez was in Peru from 1999 to 2001, and that he presented himself for inspection and was allowed to enter the United States at Reagan National Airport in 2002 (whether on a visa or otherwise).[5] In our view, any reasonable adjudicator would be compelled to conclude that DHS failed to prove Mauricio-Vasquez was admitted in 2008.[6] He is therefore not removable on the ground alleged by DHS.

---

[5] This is true even if we accept the Immigration Judge's decision to give limited weight to the declaration of Mauricio-Vasquez's mother, who did not testify at hearing despite being available. Mauricio-Vasquez's account of his 2002 entry is established primarily through his own testimony and supported by the declarations of his aunt and his mother's cousin, as well as documentary evidence.

[6] DHS theorizes that Mauricio-Vasquez could have entered at Reagan Airport in 2002 without inspection by (for example) falsely claiming that he was a United States citizen. *See generally Matter of Quilantan*, 25 I. & N. Dec. at 293 ("An alien who enters the United States under a false claim of United States citizenship has not been inspected . . . ."). The problem is that DHS presented no evidence to support such a claim.

11

III.

For the foregoing reasons, we grant Mauricio-Vasquez's petition for review. Although the ordinary practice is to remand to the agency for further proceedings consistent with our disposition, we conclude that such proceedings "would serve no purpose" here. *Medina-Lara v. Holder*, 771 F.3d 1106, 1118 (9th Cir. 2014) (quoting *Karimi v. Holder*, 715 F.3d 561, 565 (4th Cir. 2013)). The Board remanded this case once before, after the Immigration Judge determined that DHS had failed to satisfy its burden of proof. Yet despite being allowed to fully develop the record on remand, DHS has again failed to carry its burden. Under the circumstances, we decline to give DHS a "third bite at the apple." *Id.* (quoting *Siwe v. Holder*, 742 F.3d 603, 612 (5th Cir. 2012)).

We therefore vacate the order of removal, and remand to the agency with instructions to grant Mauricio-Vasquez's motion to terminate removal proceedings.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED WITH INSTRUCTIONS*