# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 21, 2015

Lyle W. Cayce
Clerk

No. 14-60183

RAMIRO CONSTANTINO TULA RUBIO, also known as Ramiro Tula,

Petitioner

v.

LORETTA LYNCH, U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before STEWART, Chief Judge, HAYNES, Circuit Judge, and BROWN, District Judge.[*]

HAYNES, Circuit Judge:

Ramiro Constantino Tula-Rubio, a native and citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals, which held he was ineligible for cancellation of removal because he was not "admitted in any status" at least seven years prior to his commission of a state offense as required by 8 U.S.C. § 1229b(a)(2).  We GRANT Tula-Rubio's petition.

## I.  Background

In 1992, at the age of four, Tula-Rubio entered the United States while riding in a car driven by a U.S. citizen, which was physically waved through the port of entry by an immigration officer.  In 2002, Tula-Rubio became a

---

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

lawful permanent resident of the United States.  While residing in the United States as a lawful permanent resident, Tula-Rubio was convicted of the Texas state offenses of possession of marijuana and evading arrest or detention, which he committed in May 2006.  After a trip to Mexico in 2013, he attempted to return to the United States by presenting his permanent resident card.  He was subsequently served a Notice to Appear and charged with removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I) & (II), due to his criminal history.

At a proceeding before an immigration judge, Tula-Rubio admitted in large part to the charges of removability.  The judge sustained the charges and held that Tula-Rubio was removable.  Tula-Rubio then filed an application for cancellation of removal pursuant to § 1229b(a).  He argued that he satisfied the requirement of "resid[ing] in the United States continuously for 7 years after having been admitted in any status," § 1229b(a)(2), because he resided in the United States after lawfully entering in 1992 pursuant to the wave of an immigration officer's hand while he was a passenger of a car.  Tula-Rubio did not offer any evidence that he received a border crossing card or visa when he entered the United States in 1992.  The immigration judge pretermitted his application for cancellation of removal, holding that Tula-Rubio's entry in 1992 did not constitute an "admission in any status" under § 1229b(a)(2).  The immigration judge reached this holding, in part, by reasoning that the term "status" denotes someone who possesses a certain legal standing and does not encompass those who have no legal right to enter or remain in the United States.  The immigration judge thus ordered Tula-Rubio's removal to Mexico.

Tula-Rubio appealed to the Board of Immigration Appeals ("the Board").  In a brief, unpublished order, the Board dismissed Tula-Rubio's appeal, agreeing with the immigration judge that his 1992 entry to the United States did not constitute an "admission in any status."  Tula-Rubio timely petitioned this court for review of the Board's decision.

No. 14-60183

## II.  Standard of Review

Although we generally lack jurisdiction to review Board decisions to deny discretionary relief, we retain authority to review "questions of law," including whether a petitioner is ineligible for discretionary relief in the form of cancellation of removal.  8 U.S.C. § 1252(a)(2)(B), (D); *see Rodriguez-Benitez v. Holder*, 763 F.3d 404, 405–06 (5th Cir. 2014).  Our review is *de novo*, but we accord appropriate deference to the Board's interpretation of the statutes it administers.  *See Vasquez-Martinez v. Holder*, 564 F.3d 712, 715 (5th Cir. 2009).  The Board's statutory interpretation in this case, which is in the form of an unpublished decision by a single Board member, is afforded *Skidmore* deference, which is commensurate with "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Dhuka v. Holder*, 716 F.3d 149, 154–56 (5th Cir. 2013) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  To the extent that the Board's decision relied on the immigration judge's reasoning, we review both decisions.  *See Rodriguez-Benitez*, 763 F.3d at 406.

## III.  Discussion

The Attorney General may cancel removal of an alien who establishes that (1) he "has been an alien lawfully admitted for permanent residence for not less than 5 years"; (2) he "has resided in the United States continuously for 7 years after having been admitted in any status"; and (3) he "has not been convicted of any aggravated felony."  § 1229b(a).  The parties agree that Tula-Rubio meets the first and third elements for eligibility for cancellation of removal.  On the second element, the parties also agree that, pursuant to the stop-time rule of § 1229b(d)(1), Tula-Rubio's period of continuous residence in the United States ended in 2006 when he committed the state offense of possession of marijuana.  *See Miresles-Zuniga v. Holder*, 743 F.3d 110, 112–13

3

No. 14-60183

(5th Cir. 2014).  However, Tula-Rubio contends that he satisfies the seven-year continuous-residency requirement of the second element because he was waved through a border crossing in 1992, while the Government argues that the Board correctly held that this entry into the country was insufficient to satisfy § 1229b(a)(2)'s requirement that he be "admitted in any status."

The only issue in this case is thus whether a wave-through entry, such as Tula-Rubio contends occurred, is an "admi[ssion] in any status" under § 1229b(a)(2).  We are not aware of any circuit court cases addressing this precise question.  Although the Supreme Court and circuit courts, including our own, have addressed application of § 1229b(a)(2) in other contexts, those cases do not answer the question presented here.[1]  We nonetheless receive guidance in our approach from the Supreme Court's application of § 1229b(a) in *Martinez Gutierrez*, 132 S. Ct. 2011.  There, the Court began by examining the Board's interpretation in light of the text of the specific statutory provision

---

[1] *See, e.g.*, *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2014 (2012) (holding that  a child "must meet [§ 1229b(a)'s] requirements on his own, without counting a parent's years of residence or immigration status"); *Rosales Figueroa v. Holder*, 455 F. App'x 492, 493–94 (5th Cir. 2011) (unpublished) (concluding that grant of employment authorization alone did not constitute admission in any status, where such authorization was not contingent on an alien being admitted or granted status); *Guevara v. Holder*, 649 F.3d 1086, 1088 (9th Cir. 2011) (holding that grant of employment authorization "does not confer admission status on an undocumented alien (one who entered without inspection or authorization and has not otherwise been admitted) for purposes of" § 1229b(a)(2)"); *Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1098 (9th Cir. 2011) (holding that receiving an approved Form I-130 Petition for Alien Relative—which "merely provides an undocumented alien (one who entered without inspection or authorization and has not otherwise been admitted) permission to apply for adjustment of status"—does not constitute admission in any status); *Deus v. Holder*, 591 F.3d 807, 810–12 (5th Cir. 2009) (concluding that an alien who entered the country illegally was not admitted in any status and that her parent's lawful permanent residence could not be imputed to her); *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1018–19 (9th Cir. 2006) (holding that for an alien who entered the country unlawfully, later acceptance into the Family Unity Program constituted admission in any status).  These cases did not involve traditional lawful entries into the country that would constitute an admission.  Therefore, the issues presented were whether the "admitted in any status" requirement could be satisfied through means other than a traditional admission.  As explained *infra*, Tula-Rubio's wave-through was a lawful entry that constituted an admission.  The question presented in this case is thus different from in the cited cases.  It revolves around whether Tula-Rubio's admission also constituted an admission *in any status*.

4

at issue and accompanying statutory definitions. *See id.* at 2015, 2017–18; *see also Deus*, 591 F.3d at 810–11 (relying primarily on the text of § 1229b(a)(2) and the statutory definitions); *In re Blancas-Lara*, 23 I. & N. Dec. 458, 459–61 (B.I.A. 2002).

The entire phrase "admitted in any status" is not defined in the Immigration and Nationality Act ("INA"), but the word "admitted" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."   8 U.S.C. § 1101(a)(13)(A). Accordingly, we employ this definition of "admitted" in determining the meaning of the larger phrase "admitted in any status." *See Martinez Gutierrez*, 132 S. Ct. at 2015 n.1 (quoting § 1101(a)(13)(A)); *Deus*, 591 F.3d at 810 (same); *In re Blancas-Lara*, 23 I. & N. Dec. at 460 (same).  It is thus clear that, to be "admitted in any status," an alien must have lawfully entered the United States. *See Martinez Gutierrez*, 132 S. Ct. at 2015 ("[T]he alien must have lived in the United States for at least seven continuous years after a lawful admission . . . ."); *id.* at 2015 n.1 ("The 7-year clock of § 1229b(a)(2) thus begins with an alien's *lawful* entry."); *Deus*, 591 F.3d at 811 ("Because Deus first entered the U.S. illegally, she was not 'admitted' as that term is statutorily defined . . . .").

There is no dispute that Tula-Rubio's wave-through entry constitutes an admission as that term is defined at § 1101(a)(13)(A).  Prior to the enactment of the definition of "admitted" at § 1101(a)(13)(A), the Board held that an alien with no immigration documents was "inspected and admitted" when an immigration officer allowed the car she was a passenger in to proceed into the United States after looking in the car and asking the driver a question. *In re Areguillin*, 17 I. & N. Dec. 308 (B.I.A. 1980).  After the enactment of the definition of admitted at § 1101(a)(13)(A), the Board reconfirmed *In re Areguillin*, holding that an alien with no immigration documents was

"admitted" as the term is defined at § 1101(a)(13)(A), when the car in which she was a passenger was waved through the port of entry by an immigration officer. *See In re Quilantan*, 25 I. & N. Dec. 285 (B.I.A. 2010).[2] Accordingly, in the present case, the Board did not hold that Tula-Rubio's wave-through entry failed to constitute an *admission*, instead concluding that the admission was not "in any status." The Board concluded that Tula-Rubio was not conferred any particular status by the immigration officer when he was admitted. Likewise, on appeal, the Government focuses on the "in any status" language and concedes that Tula-Rubio's wave-through entry "constituted an 'admission'" and that his "arguments support a finding that he was 'admitted.'"[3]

The determinative issue is therefore whether the phrase "any status" imposes an additional requirement that an alien must satisfy in addition to being admitted to the United States. We find no basis for so concluding. Although the word "status" is not defined in the INA, its general meaning is "[a] person's legal condition." BLACK'S LAW DICTIONARY 1542 (10th ed. 2014); *see also* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1220 (11th ed. 2007) (defining "status" as "the condition of a person or thing in the eyes of the law").

---

[2] The Board found that "the terms 'admitted' and 'admission,' as defined in [§ 1101(a)(13)(A)], continue to denote procedural regularity for purposes of adjustment of status, rather than compliance with substantive legal requirements." 25 I. & N. Dec. at 290. *See also Martinez v. Att'y Gen.*, 693 F.3d 408, 414 (3d Cir. 2012); *Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010); *Emokah v. Mukasey*, 523 F.3d 110, 118 (2d Cir. 2008). The Board also considered the definition of admission at § 1101(a)(13)(A) in light of its interaction with other statutory provisions of the INA and the intent of Congress in enacting the definition. *See In re Quilantan*, 25 I. & N. Dec. at 291–92. It further rejected the Government's argument that an alien "must be admitted in a particular 'status'" to satisfy the definition of admission. *Id.* at 293.

[3] The immigration judge stated in his Oral Decision that Tula-Rubio was not admitted as the term is defined at § 1101(a)(13)(A): "[T]here was no lawful entry because the applicant was waived [sic] through as a sleeping child with no documents allowing him to legally enter or remain in the United States." As stated above, the Board did not reach this same conclusion. Furthermore, the immigration judge's conclusion is directly contrary to the Board's interpretation of "admission" in *In re Quilantan*, 25 I. & N. Dec. at 290.

In conjunction, it is well settled that "the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *see also HUD v. Rucker*, 535 U.S. 125, 131 (2002); *United States v. Clayton*, 613 F.3d 592, 596 (5th Cir. 2010); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 56 (11th ed. 2007). The use of the word "any" to modify a term "suggests a broad meaning." *Ali*, 552 U.S. at 218–19; *see also Clayton*, 613 F.3d at 596 ("The CCPA uses the modifier 'any' in describing the tax debts to which it applies, a term we must construe as 'broad' and 'ha[ving] an expansive meaning.'" (quoting *Ali*, 552 U.S. at 219)). The Supreme Court has therefore explained that where, as here, Congress "did not add any language limiting the breadth of [the] word," any "must" be read "as referring to all" of the type to which it refers. *Gonzales*, 520 U.S. at 5; *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997). In other words, far from being further limiting, the word "any" is expansive.

We therefore find it clear that the plain meaning of the phrase "any status" broadly encompasses all states or conditions, of whatever kind, that an alien may possess under the immigration laws. *See Ali*, 552 U.S. at 220 ("Congress' use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind."). Section 1229b(a)(2) is thus satisfied so long as an alien has resided in the United States continuously for seven years after being admitted, as defined at § 1101(a)(13)(A), regardless of the precise legal state or condition of the alien. Along these lines, in a published opinion applying the phrase at issue in a slightly different factual context, the Board has interpreted the phrase as encompassing aliens who have been admitted, regardless of whether they are immigrants or nonimmigrants:

Although no specific definition of the word "status" is included in

> section 101 of the Act, it is generally defined in the legal context as a "standing; state or condition," and as "the legal relation of [an] individual to [the] rest of the community." BLACK'S LAW DICTIONARY 1264 (5th ed. 1979). "Status" is a term of art, which is used in the immigration laws in a manner consistent with the common legal definition. It denotes someone who possesses a certain legal standing, e.g., classification as an immigrant or nonimmigrant. The use of the word "any" to modify the word "status" indicates that Congress intended section 240A(a)(2) to include admissions of nonimmigrants as well as immigrants.

*In re Blancas-Lara*, 23 I. & N. Dec. at 460; *see also id.* at 461 ("Congress . . . chose only to require 7 years of continuous residence after admission to the United States.").[4] Likewise, the Supreme Court has described § 1229b(a)(2) as applying without regard to status. *See Martinez Gutierrez*, 132 S. Ct. at 2015 ("[Section 1229b(a)(2)] adds that the alien must have lived in the United States for at least seven continuous years after a lawful admission, *whether as* [*a lawful permanent resident*] *or in some other immigration status*." (emphasis added)). In addition to encompassing both immigrants and nonimmigrants as stated in *In re Blancas-Lara*, we also note that the phrase "any status" naturally encompasses those aliens whose status allows them to lawfully remain in the United States after admission, as well as those aliens in an unlawful status. The use of the term "any," without qualifying language such as *lawful* or *legal* to modify the word "status," requires us to broadly define the phrase to include aliens admitted in an unlawful status. *See Gonzales*, 520 U.S. at 5; *Merritt*, 120 F.3d at 1186.[5]

---

[4] *In re Blancas-Lara* does not directly govern the situation presented here because it dealt with an alien who was "admitted to the United States as the holder of a border crossing card" and clearly had the status of a nonimmigrant. 23 I. & N. Dec. at 460. Tula-Rubio was admitted in a less formal manner without receiving a border crossing card. Nonetheless, we note that the Board's broad interpretation of § 1229b(a)(2) in *In re Blancas-Lara* is consistent with our understanding of the plain meaning of the provision.

[5] The Government contends, "[t]he statute is plain on its face, [Tula-Rubio] must have been admitted in a legal status to be eligible for cancellation of removal." The problem with this argument is the statute plainly does not refer to being "admitted in *a legal* status." It

No. 14-60183

Our reading of the phrase is confirmed by the structure of § 1229b(a). In addition to the requirement at issue, § 1229b(a)(1) requires that an alien have been "lawfully admitted for permanent residence for not less than 5 years." This additional requirement—which immediately precedes the requirement at issue—demonstrates that, when it so intended, Congress clearly specified that a particular type of lawful status must be met. That Congress did not also specify a particular status or that the status be lawful in § 1229b(a)(2), but instead used the word "any," makes clear that no specific status, lawful or otherwise, is necessary to satisfy this requirement. *See Dean v. United States*, 556 U.S. 568, 573 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and internal quotation marks omitted)); *cf. In re Blancas-Lara*, 23 I. & N. Dec. at 461 ("Congress could easily have written [§ 1229b(a)(2)] to include maintenance of status as a prerequisite for relief, but it chose only to require 7 years of continuous residence after admission to the United States."). Indeed, this structure very clearly indicates that Congress intended to establish two distinct duration requirements—one that demands a period following admission in any status and one that demands a period of residency after admission. *See Martinez Gutierrez*, 132 S. Ct. at 2018 (observing that Congress "creat[ed] two distinct durational conditions: the 5-year status requirement of subsection (a)(1), which runs from the time an alien becomes [a lawful permanent resident], and the 7-year continuous-residency requirement of subsection (a)(2), which can include years preceding the acquisition of [lawful permanent residence] status").

---

instead states "admitted in *any* status." § 1229b(a)(2) (emphasis added). We must give effect to the fact that Congress unambiguously stated "*any* status" instead of specifying that the status must be a "legal" status (as Congress did specify in other provisions of the INA, as explained *infra*).

No. 14-60183

Our understanding of the phrase is further confirmed by the use of the term "status" throughout the INA. *See Comm'r v. Lundy*, 516 U.S. 235, 250 (1996) ("[I]dentical words used in different parts of the same act are intended to have the same meaning." (quoting *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990))). The INA's "[p]resumption of status" provision confirms that the term status encompasses immigrants and nonimmigrants alike, with the presumption being that an alien has the status of an immigrant unless the alien establishes he is a non-immigrant. 8 U.S.C. § 1184(b) (providing, with a few exceptions, that "[e]very alien . . . shall be presumed to be an immigrant until he establishes . . . that he is entitled to a nonimmigrant status"); *see also* 8 U.S.C. § 1101(a)(15); *Saxbe v. Bustos*, 419 U.S. 65, 67 (1974). The INA also refers to aliens who are "in unlawful immigration status," "lawful status," and "lawful nonimmigrant status," confirming that the term status encompasses both lawful *and unlawful* legal conditions under the INA. 8 U.S.C. § 1255(c).[6] In addition, the INA "[a]djustment of status" provision refers to "an alien who was inspected and admitted or paroled in the United States" as having a "status" that can be adjusted by the Attorney General to that of a lawful permanent resident. § 1255(a).

To reiterate, a plain reading of § 1229b(a)(2) makes clear that it is satisfied so long as an alien has resided in the United States continuously for seven years after being admitted, as defined at § 1101(a)(13)(A), regardless of

---

[6] *See also* 8 U.S.C. § 1184(k)(3) ("continued stay in lawful status"); 8 U.S.C. § 1254a(f)(4) ("lawful status as a nonimmigrant"); 8 U.S.C. § 1255a(a)(2)(A)–(B) (referring to an alien who "has resided continuously in the United States in an unlawful status" and "the alien's unlawful status"); 8 U.S.C. § 1433(a)(5) ("maintaining such lawful status"). These references to specific types of status, including unlawful status, in other portions of the INA indicate that Congress did not intend for "any status" to mean "lawful status" or any other particular type of status. Had Congress so intended, it could have clearly stated "lawful" status in § 1229b(a)(2) as it did in these other provisions of the INA. *See Dean*, 556 U.S. at 573. Moreover, if "status" carried the meaning "lawful" or "legal" status as the Government argues, it would render superfluous those provisions in the INA that refer to lawful status and render inconsistent those provisions in the INA that refer to unlawful status.

the precise legal state or condition of the alien at the time of admission.[7] Contrary to Board's conclusion, Tula-Rubio's alleged wave-through admission meets this requirement, such that he is eligible for cancellation of removal relief under § 1229b(a). Given his admission, it matters not whether his status under the immigration law at that time was lawful or unlawful or that of an immigrant or nonimmigrant.

Even assuming the language of the statute could be considered ambiguous, we do not find the Board's interpretation in this case to be persuasive, as it does not rest on thorough or valid reasoning. *See Dhuka,* 716 F.3d at 154–56 (quoting *Skidmore,* 323 U.S. at 140)). The Board's reason for its conclusion was simply that Tula-Rubio did not demonstrate that "the immigration officer conferred any status upon him at the port of entry in 1992." It cited *In re Blanca-Lara,* 23 I. & N. Dec. at 460, for the proposition that "[t]he term 'status' denotes someone who possesses a certain legal standing." It noted that Tula-Rubio was not "in possession of a valid entry document," and the immigration officer did not issue him "any form of documentation to denote that he held 'lawful status' in this country." The Board gave no reason why § 1229b(a)(2) should be read as requiring an immigration officer to formally designate the status of an alien at the time of admission or issue documentation to the alien. Nor do we perceive a basis for reading the broad and encompassing phrase "any status" as imposing an additional requirement of formality, which is satisfied depending on the thoroughness of the immigration officer's admission procedure. To the extent that the Board concluded the phrase "any status" indicates that the alien must "possess a *certain* legal standing" or "*lawful* status" at the time of admission, we disagree

---

[7] "Given the straightforward statutory command, there is no reason to resort to legislative history." *Gonzales,* 520 U.S. at 6.

for the reasons already stated.[8]

## IV.  Conclusion

For the foregoing reasons, Tula-Rubio's petition for review is GRANTED. We VACATE the decision of the Board of Immigration Appeals and REMAND for further proceedings to consider discretionary aspects of Tula-Rubio's application for cancellation of removal.

---

[8] On appeal, the Government's arguments focus on the fact that Tula-Rubio was not conferred a particular status upon admission and did not have immigration documents, largely mirroring the reasoning of the Board. As stated, these arguments are unpersuasive. The Government also emphasizes the Supreme Court's description of § 1229b(a)(2) as requiring "that the alien must have lived in the United States for at least seven continuous years after a lawful admission." *Martinez Gutierrez*, 132 S. Ct. at 2015. Our interpretation is fully consistent with this description. The Court's explanation in the accompanying footnote demonstrates that by "lawful admission" the Court was simply referring to the definition of admission in the INA as a "lawful entry." *See id.* at 2015 n.1 ("The INA defines 'admitted' as referring to 'the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.' 8 U.S.C. § 1101(a)(13)(A). The 7-year clock of § 1229b(a)(2) thus begins with an alien's *lawful* entry."). As we have explained, there is no dispute in this case that Tula-Rubio's lawful entry was an admission as defined at § 1101(a)(13)(A).