**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ABRAHAM VILLALBA SALDIVAR,
AKA Abraham Saldivar, AKA
Abraham Villalba,
                    *Petitioner*,

                    v.

JEFFERSON B. SESSIONS III, Attorney
General,
                    *Respondent.*

No. 13-72643

Agency No.
A077-979-428

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued August 2, 2016
Submitted November 1, 2017
Pasadena, California

Filed November 7, 2017

Before: Stephen Reinhardt, Alex Kozinski,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge Kozinski

## SUMMARY*

### Immigration

The panel granted Abraham Villalba Saldivar's petition for review of the Board of Immigration Appeals' decision holding that Saldivar was statutorily ineligible for cancellation of removal for failure to establish seven years continuous residence in the United States after being "admitted in any status," and vacated and remanded.

For the purposes of the appeal, the panel assumed that Saldivar was "waved through" at a port of entry, and reaffirmed that an alien is "admitted" when he presents himself for inspection and is waved through a port of entry. The panel held that the term "in any status" plainly encompasses every status recognized by immigration statutes, lawful or unlawful. The panel therefore concluded that Saldivar was statutorily eligible for cancellation of removal because he established continuous residence in the United States for more than seven years after his admission.

Dissenting, Judge Kozinski wrote that the majority defies structure, precedent and common sense by interpreting immigration status to mean both lawful and unlawful status. Judge Kozinski concluded that the only sensible way to read the term status is to refer to one of several specific lawful categories, and that the majority creates an intra-circuit conflict with *Lai Haw Wong v. INS*, 474 F.2d 739, 742 (9th Cir. 1973), where the court explained that "mistaken

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

admission conferred no status, permanent resident or otherwise." Further, Judge Kozinski wrote that if any doubt remains about the meaning of status, the court should defer under *Chevron* to the BIA's interpretation.

## COUNSEL

Patrick F. Valdez (argued), Valdez Law Firm, Inglewood, California, for Petitioner.

Sergio Sarkany (argued), Trial Attorney; Kiley Kane, Senior Litigation Counsel; United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

REINHARDT, Circuit Judge:

Abraham Villalba Saldivar ("Saldivar"), a native and citizen of Mexico, petitions for review of a decision by the Board of Immigration Appeals ("BIA"). In an unpublished, single-member decision, the BIA held that he was statutorily ineligible for cancellation of removal because he could not establish seven years of continuous residence in the United States after having been "admitted in any status." 8 U.S.C. § 1229b(a)(2). Saldivar was "admitted" in 1993 when he was waved across the border after inspection by an immigration officer. Therefore, we must address only whether this "admission" was "in any status." Because the phrase "in any status" plainly encompasses every status recognized by immigration statutes, lawful or unlawful, we hold that Saldivar's procedurally regular admission in 1993 was an

admission in any status under § 1229b(a)(2) and grant his petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

Saldivar entered the United States in 1993 as a ten-year-old child when he was "waved through inspection" by an officer at the port of entry in San Ysidro, California. In 2001, Saldivar married Desiree Luzano, a United States citizen. The couple has three children, who are also U.S. citizens. On October 11, 2006, Saldivar adjusted his status to lawful permanent resident ("LPR"). About six years later, on September 25 and 26, 2012, he was convicted in California Superior Court of possession of methamphetamine and possession of paraphernalia used for smoking a controlled substance.

On November 1, 2012, the U.S. Department of Homeland Security served Saldivar with a Notice to Appear, alleging that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) as a noncitizen convicted of a controlled substance violation. At Saldivar's hearing, the Immigration Judge ("IJ") found that the charge in the Notice to Appear was proven by clear and convincing evidence, rendering him removable.

Saldivar applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(a). Before conducting a hearing on the application for cancellation of removal, the IJ ordered the parties to submit briefs addressing whether Saldivar was statutorily eligible for that form of relief. Based on the written submissions, and without taking any evidence or testimony as to whether Saldivar was in fact "waved through the border" in 1993, the IJ determined that he was ineligible

for cancellation of removal as a matter of law. He reasoned that even if Saldivar had been waved through in 1993, he still could not establish the requisite seven years of continuous residence in the United States after being "admitted in any status" under § 1229b(a)(2). According to the IJ, Saldivar's "procedurally correct inspection and admission" in 1993 could not be considered an admission "in any status" because "mistaken admissions do not confer a status, either permanent or otherwise." Nor could Saldivar rely on his LPR status to satisfy the seven-year continuous residency requirement: his controlled substance violation cut off his period of continuous residence approximately six years after he adjusted his status to LPR.

The BIA affirmed the IJ's decision. It rejected Saldivar's argument that he was "admitted in any status" in 1993 when he was waved across the border. Relying on *In re Blancas-Lara*, 23 I. & N. Dec. 458, 460 (BIA 2002), the BIA concluded that an "admission with procedural regularity," such as being waved through the border by an immigration officer, "is not tantamount to admission 'in any status,' either immigrant or nonimmigrant." Therefore, it held, Saldivar could not establish continuous residence for seven years after being admitted in any status and was not eligible for cancellation of removal. Saldivar timely petitioned for review.

## STANDARD OF REVIEW

"Because the BIA wrote its own decision and did not adopt the IJ's decision, we review the BIA decision only, not the IJ's decision." *Aden v. Holder*, 589 F.3d 1040, 1043 (9th Cir. 2009). We review de novo the BIA's determination of

legal questions. *Vitug v. Holder*, 723 F.3d 1056, 1062 (9th Cir. 2013).

## ANALYSIS

In order to establish eligibility for cancellation of removal, Saldivar must demonstrate that he: "(1) has been an alien lawfully admitted for permanent residence for not less than five years, (2) has resided in the United States continuously for seven years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a). The parties do not dispute that Saldivar satisfies the first and third requirements. The only dispute is whether Saldivar was "admitted in any status" when he entered the United States in 1993.

## A. Saldivar was "admitted" in 1993 when he was waved through the border.

For purposes of this appeal, we assume that Saldivar entered the United States in 1993 and that he was "waved through" the port of entry by an immigration officer.[1] We reaffirm that an alien is "admitted" when he presents himself for inspection and is waved through a port of entry, in accordance with our precedent and the BIA's longstanding

---

[1] Saldivar has consistently maintained that he was waved across the border in 1993, but as the government points out, "the representations made regarding this alleged entry were solely set forth by counsel" and are not clearly established by the record. That is because, before conducting an evidentiary hearing, the IJ decided that Saldivar was statutorily ineligible for cancellation of removal, even if he was waved across the border in 1993. The BIA agreed, concluding that such an entry, if it occurred, did not satisfy admission "in any status" as a matter of law. Accordingly, no evidentiary hearing was ever held.

interpretation of "admission." *See Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 & n.7 (9th Cir. 2010); *In re Areguillin*, 17 I. & N. Dec. 308, 309–310 (BIA 1980) (concluding that respondent was "admitted" when "an immigration officer at the port of entry looked inside the car, asked the driver a question, then permitted the car and its occupants [including respondent] to proceed into the United States"). In *Areguillin*, the BIA explained that "'[a]dmission' occurs when the inspecting officer communicates to the applicant that he has determined that the applicant is not inadmissible . . . [by] permit[ing] the applicant to pass through the port of entry." *Id.* at 310 n.6. As we have explained previously, the BIA has consistently "defined 'admission' in procedural terms." *Hing Sum*, 602 F.3d at 1100 & n.7 (9th Cir. 2010). When Congress adopted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amendments to the Immigration and Nationality Act ("INA") in 1996, it "expressly incorporate[d] this procedural definition" of "admission" at 8 U.S.C. § 1101(a)(13)(A). *Id.*[2] As both parties agree, a procedurally

---

[2] After IIRIRA, "admitted" and "admission" were statutorily defined to mean "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). We have explained that "the plain meaning of the term 'admission' in § 1101(a)(13)(A) . . . refers to a procedurally regular admission and not a substantively lawful admission." *Hing Sum*, 602 F.3d at 1096; *see also In re Quilantan*, 25 I. & N. Dec. 285, 290 (BIA 2010) (reconfirming that procedurally regular admission constitutes an "admission" as defined by §1101(a)(13)(A)). Therefore, although the IIRIRA did not exist in 1993 when Saldivar entered the United States, the IIRIRA essentially codified the definition of "admission" in *Areguillin*, which has consistently governed since 1980. Regardless of whether an alien entered the United States before or after IIRIRA, procedural lawfulness, meaning inspection and admission by an

regular admission requires only "an inspection and authorization by an immigration officer." *Id.* Thus Saldivar was "admitted" when he was waved through the border in 1993.

**B. Saldivar was admitted "in any status" in 1993.**

Because Saldivar was undisputedly "admitted" in 1993, we must decide whether that admission was "in any status." We conclude that it was.

The government erroneously contends that we should defer to the BIA's construction of 8 U.S.C. § 1229b(a)(2) under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). *Chevron* requires us to accept the BIA's reasonable constructions of statutory terms in the INA, but *only if* those terms are ambiguous. *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1087 (9th Cir. 2013) (en banc). Here, because the text of the INA "unambiguously bars" the BIA's interpretation, "that is the end of the analysis," and we must remand so that the Board may apply § 1229b(a)(2) in light of our holding.[3] *See*

---

immigration officer, "and not substan[tive lawfulness], is determinative of an 'admission' into the United States." *Hing Sum*, 602 F.3d at 1101.

[3] The government maintains that the statute is ambiguous and therefore we should defer to the BIA's reasonable interpretation. Although we normally do not accord *Chevron* deference to an unpublished decision issued by a single board member, the government asserts that *Chevron* deference is appropriate in this case because the BIA's decision was based on its previously published and precedential decision, *In re Blancas-Lara*, 23 I. & N. Dec. 458 (BIA 2002).

Even if § 1229b(a)(2) were ambiguous—and it is not—the BIA's decision in this case would not be entitled to *Chevron* deference based on

*Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 815 (9th Cir. 2016); *see also Mellouli v. Lynch*, 135 S. Ct. 1980, 1989 (2015) (explaining that where the BIA's interpretation "makes scant sense," it "is owed no deference under" *Chevron* doctrine).

---

its citation to *Blancas-Lara*. An unpublished decision of a single board member is entitled to *Chevron* deference based on its citation to a previous decision only if "the precise issue of statutory interpretation had been answered by the BIA in a published decision that carried the force of law." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1014 (9th Cir. 2006), *abrogated on other grounds by Medina-Nunez v. Lynch*, 788 F.3d 1103, 1104–05 (9th Cir. 2015). *Blancas-Lara*, however, "does not directly govern the situation presented here because it dealt with an alien who was 'admitted to the United States as the holder of a border crossing card' and clearly had the status of a nonimmigrant." *Tula-Rubio v. Lynch*, 787 F.3d 288, 294 n.4 (5th Cir. 2015). It did not address the situation before us now, in which an alien was lawfully admitted in an unlawful status. It merely held that the use of "any" in § 1229b(a)(2) signified that Congress "intended . . . to include" and did include "admissions of nonimmigrants" in that provision. 23 I. & N. Dec. at 459–60. In fact, it is important to note that the BIA's broad definition of "status" in *Blancas-Lara* is actually wholly consistent with our interpretation of the statute's unambiguous language. *See id.*; *infra* n.6.

At the very most, the BIA's unpublished decision in this case is entitled to *Skidmore* deference, under which we must consider "the validity of the BIA's reasoning, its thoroughness, and overall persuasiveness." *Garcia-Quintero*, 455 F.3d at 1015. For the reasons given in this opinion, including the BIA's misinterpretation of *Blancas-Lara* itself, *see Henriquez-Rivas*, 707 F.3d at 1083 (granting petition for review where BIA "misapplied its own precedent"), we do not find the BIA's interpretation of § 1229b(a)(2) to be persuasive or based on valid reasoning. Therefore, even if the statute were ambiguous, the BIA's interpretation could not govern, regardless of which level of deference it is due.

Only the Fifth Circuit has previously considered the precise issue before us, and that court held unequivocally that the statute is unambiguous. We agree with our fellow circuit and its reasoning. Accordingly, we join the Fifth Circuit in concluding that the "plain meaning of the phrase 'any status'" unambiguously includes "all states or conditions, of whatever kind, that an alien may possess under the immigration laws," including any lawful or unlawful status. *Tula Rubio*, 787 F.3d at 293, 294 n.5.

"Although the word 'status' is not defined in the INA, its general meaning is '[a] person's legal condition.'" *Id.* at 293 (quoting *Black's Law Dictionary* 1542 (10th ed. 2014)); *see also In re Blancas-Lara*, 23 I. & N. Dec. at 460 ("'Status' is a term of art, which is used in the [INA] in a manner consistent with the common legal definition," i.e. "a '[s]tanding; state or condition,' and as '[t]he legal relation of [an] individual to [the] rest of the community.'" (alterations in original) (quoting *Black's Law Dictionary* 1264 (5th ed. 1979))).[4] In § 1229b(a)(2), "status" is modified by the word "any," which, when "[r]ead naturally, . . . has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5

---

[4] Unlawful status is clearly a "state or condition" and a descriptor of an individual's "legal relation . . . to the rest of the community" and thus within the BIA's definition of "status" in *Blancas-Lara*. 23 I. & N. Dec. at 460 (quoting Black's Law Dictionary 1264 (5th ed. 1979)). Contrary to the dissent's contention, *Blancas-Lara*'s further explanation of status as denoting "someone who possesses a certain legal standing, e.g. classification as an immigrant or nonimmigrant," does not limit the universe of potential "state[s] or condition[s]" for purposes of immigration law to solely those two conditions. *See id.* "E.g." is not, incidentally, synonymous with "i.e."

(1997)); *see also Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1153 (9th Cir. 2010) ("The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." (quoting *Fleck v. KDI Sylvan Pools Inc.*, 981 F.2d 107, 115 (3d Cir.1992))).

Because Congress "did not add any language limiting the breadth of [the] word 'any'" to § 1229b(a)(2), we must read the phrase "in any status" as "referring to *all*" states or conditions that an alien may possess under the INA, including both lawful and unlawful status. *See Gonzales*, 520 U.S. at 5 (emphasis added); *Tula-Rubio*, 787 F.3d at 293. Indeed, the INA repeatedly refers to both "unlawful" or "lawful" status, meaning that the phrase "in *any* status" elsewhere in the Act must encompass unlawful status. *See, e.g.*, 8 U.S.C. § 1644 ("Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, *lawful or unlawful*, of an alien in the United States."(emphasis added)); 8 U.S.C. § 1255a(a)(2)(A), (B) (requiring certain noncitizens to establish continuous residence in an "unlawful status" for adjustment purposes); 8 U.S.C. § 1365(b) (referencing "unlawful status"); *see also Tula-Rubio*, 787 F.3d at 295 & n.6 (citing provisions in the INA that refer to "lawful status," and noting that such provisions would be superfluous if "status" is equivalent to "lawful status"). The fact that other provisions of the INA use the word "status" to refer to unlawful immigration status confirms that the phrase "any status" must be read to encompass unlawful, as well as lawful, status. *See Sorenson v. Sec'y of Treasury of U.S.*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that 'identical words used in different

parts of the same act are intended to have the same meaning.'") (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934)); *Tula-Rubio*, 787 F.3d at 295.[5]

The government's argument that "in any status" means "in any *lawful* status" is facially incorrect. First, the word "lawful" is conspicuously absent from the broadly inclusive phrase "in *any* status" in § 1229b(a)(2). One need look no further than § 1229b(a)(1), the immediately preceding provision, to confirm that Congress understands the necessity of using the word "lawful" or "lawfully" when it intends to be restrictive. *See* 8 U.S.C. § 1229b(a)(1) (requiring that an alien "has been an alien *lawfully* admitted for permanent residence for not less than 5 years" to be eligible for cancellation of removal) (emphasis added).[6]

---

[5] The INA's description of a form of relief as "adjustment of status" also compels a broad reading of "in any status." The relief is available to some individuals who have lawful status and to some who have unlawful status. 8 U.S.C. § 1229b(b); § 1255; § 1255a. "Adjustment of status" presupposes, by its chosen language, that those lacking lawful status possess *a* status that is then "adjust[ed] to" a different one. *See, e.g.*, § 1229b(b) (permitting the Attorney General to "adjust to the status of an alien lawfully admitted for permanent residence," with no requirement of prior lawful status); 8 U.S.C. § 1255(c)(2) (providing for certain instances in which those "in unlawful immigration status" at the time of filing an application for adjustment may nevertheless adjust).

[6] The language of § 1229b(a)(1) also reveals the flaw in the government's argument that an "inadvertent admission" cannot "accord [an alien] any status" under our decision in *Lai Haw Wong v. INS*, 474 F.2d 739 (9th Cir. 1973). In that case, we affirmed the BIA's decision that the "admission [of Wong and her sons] on visas to which they were not entitled conferred no lawful status . . . and that they could not rely on each other's admission to gain section 241(f) status." *Id.* at 741. *Wong*, however, evaluated the family's eligibility for relief from removal under (what was then) INA § 241(f), 8 U.S.C. § 1251(f), under which "an alien

Second, the government argues that unless we read "in any status" to mean "in any *lawful* status," we will render the phrase "in any status" surplusage. Again, the immediately antecedent provision, § 1229b(a)(1), reveals the government's error. The phrase "in *any* status" is not surplusage: instead, it serves to distinguish § 1229b(a)(2) from § 1229b(a)(1), which requires that an alien seeking cancellation of removal be "*lawfully* admitted for permanent residence for not less than 5 years." As the Fifth Circuit has rightly observed, "this

---

otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien *lawfully admitted for permanent residence*" was not deportable. *Id.* at 741 n.2 (emphasis added). Section 241(f) makes no reference to "status." In context, our statement that the "mistaken admission conferred no status, permanent resident or otherwise," pertained only to their lack of lawful status, i.e. permanent resident or otherwise, e.g. § 241(f) status, § 1101(a)(15)(B) temporary visitor status, or § 1101(a)(15)(D) alien crewman status. *See id.* at 742; *see generally* 8 U.S.C. § 1101(a)(15) (1970) (listing various "classes of nonimmigrant aliens"). The opinion did not purport to delineate the meaning of "status" in the INA. Its single, passing reference to "no status," in determining whether any family member's admission qualified another for § 241(f) status, is simply inapposite in interpreting § 1229b(a)(2). "[T]he language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979).

Since 1973, no court has ever relied on *Lai Haw Wong* to construe the meaning of "status" in the INA, much less to construe unlawful status as not "any status." Rather, we have described the case in accordance with our understanding here, as "approv[ing] the BIA's ruling that" the Wongs' admission "conferred no *lawful* status on the aliens for purposes of obtaining relief from deportation." *Monet v. INS*, 791 F.2d 752, 753 (9th Cir. 1986) (emphasis added); *see also Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010) (citing *Lai Haw Wong* to support the proposition that a noncitizen "was never lawfully admitted for permanent residence," making derivative visa grants improper (internal quotation marks omitted)).

structure very clearly indicates that Congress intended to establish two distinct duration requirements—one that demands a period following admission in any status and one that demands a [shorter] period of residency after admission" to LPR status. *Tula-Rubio*, 787 F.3d at 295. Unlike the narrower preceding provision in § 1229b(a)(1), which requires lawful admission to LPR status for at least five years, Congress chose to apply § 1229b(a)(2)'s seven-year continuous residency requirement to admission in *any* status, lawful or unlawful.[7]

---

**[7]** The government's reliance on our prior precedents interpreting § 1229b(a)(2) is misplaced. Citing *Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1102–03 (9th Cir. 2011), it contends that we have previously concluded that LPRs, like Saldivar, do not begin to accrue continuous residence under § 1229b(a)(2) until they adjust to LPR status. The government, however, overlooks a key distinction between *Vasquez* and the present case: unlike Saldivar, who was unquestionably "admitted" in 1993, the petitioner in *Vasquez* entered without inspection and was never otherwise admitted. *See id.* at 1098. We concluded in *Vasquez* that an alien who was never otherwise admitted could not be considered "admitted in any status" when his I-130 visa petition was approved. *See id.*; *see also Garcia-Quintero*, 455 F.3d at 1018–19 (concluding acceptance into the Family Unity Program constitutes admission in any status); *Guevara v. Holder*, 649 F.3d 1086, 1091–92 (9th Cir. 2011) (holding employment authorization does not constitute admission in any status); *see also Tulia-Rubio*, 787 F.3d at 291 & n.1 (noting that *Vasquez*, *Garcia-Quintero*, and *Guevara* do not resolve the applicability of § 1229b(a)(2) to "wave through entry").

None of these cases supports the government's proposition that an alien who was unquestionably "admitted" was not admitted "in any status." If anything, this line of precedent supports Saldivar's argument, because it interprets "admitted in any status" as being *broader* than simply "admitted" and as allowing noncitizens who do not go through regular inspection and authorization to qualify. *See Vasquez de Alcantar*, 645 F.3d at 1101 ("[T]he clause "in any status" has been interpreted to create *alternative methods for aliens, who do not enter after inspection*

The structure of § 1229b thus confirms what was already unambiguously clear from the plain meaning of the text: the statute requires continuous presence for seven years after a procedurally lawful admission in *any* immigration status, lawful *or* unlawful.**[8]** Perhaps, had Congress required admission "in any status *whatsoever*" in § 1229b(a)(2), the government might have acknowledged that unlawful status was covered by the phrase it now finds ambiguous. However, as we have explained, the term "any," in its plain meaning, is all-inclusive and any further language would be pure surplusage. In short, any is any, and a status is a status, be it lawful or unlawful.

## CONCLUSION

Under the facts as we assume them to be, Saldivar was admitted to the United States in 1993, albeit in an unlawful status. Because he established continuous residence in the United States for more than seven years after this admission, the BIA erred as a matter of law in concluding that Saldivar was statutorily ineligible for cancellation of removal. Saldivar's petition for review is **GRANTED**, and we **VACATE and REMAND** for further proceedings consistent with this opinion.

---

*and authorization*, to meet the "admitted in any status" requirement of § 1229b(a)(2)." (emphasis added)).

**[8]** Because we conclude that Saldivar's procedurally regular admission constituted an admission "in any status" as a matter of law, we need not reach his argument that he should have been presumed to have been admitted in immigrant status pursuant to 8 U.S.C. § 1184(b).

KOZINSKI, Circuit Judge, dissenting:

Words like "sanction" and "cleave" are contronyms—their own opposites. My colleagues create a new one today. Going forward—in defiance of structure, precedent and common sense—immigration status means both lawful status and unlawful status.

Section 1229b(a)(2) of the INA makes an alien eligible for cancellation of removal if he "has resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a)(2). Fifteen years ago, the Board of Immigration Appeals explained that "'[s]tatus' . . . denotes someone who possesses a certain legal standing, e.g., classification as an immigrant or nonimmigrant." *In re Blancas-Lara*, 23 I. & N. Dec. 458, 460 (BIA 2002). This means that aliens lacking either classification when they enter the country possess no status under the immigration laws.

That's the only sensible way to read the INA. When an actor says "wish me luck" before an audition, he's not asking his friend to wish him both good and bad luck. Or when the best man at a wedding toasts the newlyweds' health, he's not wishing them both good and ill health. Context makes clear that those terms denote only something positive. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012). We interpret the INA's "any status" similarly: It must refer to one of several specific lawful categories. Otherwise, why mention status at all? If Congress intended to grant eligibility for cancellation of removal to people who deceive the border authorities into admitting them, it would have put a period after "admitted" in section 1229b(a)(2) and omitted any reference to status.

In a vain effort to avoid this surplusage problem, the majority argues that section 1229b(a)(2) of the INA doesn't use the phrase "lawfully admitted," while the preceding section 1229b(a)(1) does—thus (according to the majority) indicating that Congress meant "any status" to include unlawful status. The Fifth Circuit bought the same specious argument in *Tula Rubio* v. *Lynch*, 787 F.3d 288 (5th Cir. 2015). Rubbish. Section 1229b(a)(1) provides that aliens seeking cancellation of removal must have been "lawfully admitted *for permanent residence* for not less than 5 years." 8 U.S.C. § 1229b(a)(1) (emphasis added). This refers to the point in time when the alien is granted permanent resident status, which is not necessarily when he crosses the border. Section 1229b(a)(2), by contrast, refers to an alien's classification when he first enters the country. Our law defines many entry categories that do not provide for permanent resident status—those that cover tourists, students, ambassadors and so forth. *See* 8 U.S.C. § 1101(a)(15). The processes the statute references—initial admission into the U.S. and acquisition of permanent resident status—don't always occur simultaneously. An alien might enter the country with an F-1 student visa, subsequently receive an employment visa and eventually wish to convert that visa to a green card. Section 1229b(a)(1) refers to this legal admission to permanent resident status rather than to the physical admission at the border.

The statute's duration requirements support this reading: To be eligible for cancellation of removal, an applicant must have held some sort of immigration status for seven years, but permanent resident status for only five. Thus, admission to permanent resident status can occur long after entering the country. It doesn't make sense to contrast "lawfully admitted for permanent residence" with "admitted in any status"

because they refer to different steps that may occur at different times and involve different processes.  "Lawfully admitted for permanent residence" refers to the alien's change of legal status.  It has nothing to do with border crossing.

The fundamental distinction in this case—status versus nonstatus—has long existed in our precedent.  In *Lai Haw Wong* v. *INS*, 474 F.2d 739 (9th Cir. 1973), we explained that "mistaken admission conferred *no status, permanent resident or otherwise*, on [the aliens in question]."  *Id.* at 742 (emphasis added).  This can't be squared with the majority's ruling that if someone is merely waved across the border with "procedural regularity," he acquires a status for purposes of the INA.  Under *Lai Haw Wong*, such a person holds no status at all.  My colleagues argue that the Wong family's entry process was very different from Saldivar's, but that has no bearing on the critical interpretive issue—whether "any status" includes unlawful status.  The majority creates an intra-circuit conflict with *Lai Haw Wong*.

If any doubt remains about the meaning of status, *Chevron* requires that we defer to the agency.  In a published opinion over a decade ago, the BIA interpreted the term as limited to immigrant and nonimmigrant status—not people who commit immigration fraud by presenting false papers at a border checkpoint.  *See Blancas-Lara*, 23 I & N at 460.  Limiting any status to legal status is not merely *a* plausible meaning, it is the *only* plausible meaning.  The majority's claim that "any status" unambiguously expresses the opposite meaning (and thus that the BIA's definition isn't entitled to *Chevron* deference) doesn't pass the snicker test.

Finally, the majority's interpretation is profoundly illogical. My colleagues seem to believe that Congress made an immigration benefit available to someone who fools the immigration authorities at a border checkpoint, but not someone who scales a border fence or tunnels under a wall. It's nonsense to think that Congress would treat aliens who deceive the immigration authorities better than those who sneak in hidden in a cargo van. What purpose would such a distinction serve? This ruling also creates perverse incentives: Potential deportees will claim, like Saldivar, that they were waved in by a guard regardless of how they actually entered. Obviously, there would be no record contradicting them, so the incentive to lie would be powerful and the chance of getting caught nil.

My colleagues misread the INA, trample our precedent and turn their backs on *Chevron*, all to create a giant loophole that will enable thousands to lie their way to relief that Congress never intended them to have. The Fifth Circuit got it wrong and the Ninth now follows them down the rabbit hole. It's time for another opinion.