KOZINSKI, Circuit Judge, dissenting: Words like “sanction” and “cleave” are contronyms—their own opposites. My colleagues create a new one today. Going forward—in defiance of structure, precedent and common' sense—immigration status means both lawful status and unlawful status. Section 1229b(a)(2) of the INA makes an alien eligible for cancellation of removal if he “has resided in the United States continuously for 7 years after having been admitted in any status.” 8 U.S.C. § 1229b(a)(2). Fifteen years ago, the Board of Immigration Appeals explained that “ ‘[s]tatus’ ... denotes someone who possesses a certain legal standing, e.g., classification as an immigrant or.nonimmi-grant.” In re Blancas-Lara, 23 I. & N. Dec. 458, 460 (BIA 2002). This means that aliens lacking either classification when they enter the country possess no status under the immigration laws. That’s the only sensible way to read the INA. When an actor says “wish me luck” before an audition, he’s not asking his friend to wish him both good and bad luck. Or when the best man at a wedding toasts the newlyweds’ health, he’s not wishing them both good and ill health. Context makes clear that those terms denote only something positive. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012). We interpret the INA’s “any status” similarly: It must refer to one of several specific lawful categories. Otherwise, why mention status at all? If Congress intended to grant eligibility for cancellation of removal to people who deceive the border authorities into admitting them, it would have put a period after “admitted” in section 1229b(a)(2) and omitted any reference to status. In a vain effort to avoid this surplusage problem, the majority argues that section 1229b(a)(2) of the INA doesn’t use the phrase “lawfully admitted,” while the preceding section 1229b(a)(1) does—thus (according to the majority) indicating that Congress meant “any status” to include unlawful status. The Fifth Circuit bought the same specious argument in Tula Rubio v. Lynch, 787 F.3d 288 (5th Cir. 2015). Rubbish. Section 1229b(a)(1) provides that aliens seeking cancellation of removal must have been “lawfully admitted for permanent residence for not less than 5 years.” 8 U.S.C. § 1229b(a)(1) (emphasis added). This refers to the point in time when the alien is granted permanent resident status, which is not necessarily when ,he crosses the border. Section 1229b(a)(2), by contrast, refers to an alien’s classification when he first enters the country. Our law defines many entry categories that do not provide for permanent resident status— those that cover tourists, students, ambassadors and so forth. See 8 U.S.C. § 1101(a)(15). The processes the statute references—initial admission into the U.S. and acquisition of permanent resident status—don’t always occur simultaneously. An alien might enter the country with an F-l student visa, subsequently receive an employment visa and eventually wish to convert that visa to a green card. Section 1229b(a)(1) refers to this legal admission to permanent resident status rather than to the physical admission at the border. The . statute’s ■ duration requirements support this reading: To be eligible for cancellation of removal, an applicant must have held some sort of immigration status for seven years, but permanent resident status for only five. Thus, admission to permanent resident status can occur long after entering the country. It doesn’t make sense to contrast “lawfully admitted for permanent residence” with “admitted in any status” because they refer to different steps that may occur at different times and involve different processes. “Lawfully admitted for permanent residence” refers to the alien’s change of legal status. It has nothing to do with border crossing. The fundamental distinction in this case—status versus nonstatus—has long existed in our precedent. In Lai Haw Wong v. INS, 474 F.2d 739 (9th Cir. 1973), we explained that “mistaken admission conferred no status, permanent resident or otherwise, on [the aliens in question].” Id., at 742 (emphasis added). This can’t be squared with the majority’s ruling that if someone is merely waved across the border with “procedural regularity,” he acquires a status for purposes of the INA. Under Lai Haw Wong, such a person holds no status at all. My colleagues argue that the Wong family’s entry process was very different from Saldivar’s, but that has no bearing on the critical interpretive issue—whether “any status” includes unlawful status. The majority creates an intra-circuit conflict with Lai Haw Wong. If any doubt remains about the meaning of status, Chevron requires that we defer to the agency. In a published opinion over a decade ago, the BIA interpreted the term as limited to immigrant and nonim-migrant status—not people who commit immigration fraud by presenting false papers at a border checkpoint. See Blancas-Lara, 23 I. & N. Dec. at 460. Limiting any status to legal status is not merely a plausible meaning, it is the only plausible meaning. The- majority’s claim that “any status” unambiguously expresses the opposite meaning (and thus that the BIA’s definition isn’t entitled to Chevron deference) doesn’t pass the snicker test. Finally, the majority’s interpretation is profoundly illogical. My colleagues seem to believe that Congress made an immigration benefit available to someone who fools the immigration ’ authorities at a border checkpoint, but not someone who scales a border fence or tunnels under a wall. It’s nonsense to think that Congress would treat aliens who deceive the immigration authorities better than those who sneak in hidden in a cargo van. What purpose would such a distinction serve? This ruling also creates perverse incentives: Potential deportees will claim, like Saldivar, that they were waved in by a guard regardless of how they actually entered. Obviously, there would be no record contradicting them, so the incentive to lie would be powerful and the chance of getting caught nil. My colleagues misread the INA, trample our precedent and turn them backs on Chevron, all to create a giant loophole that will enable thousands to lie their way to relief that Congress never intended them to have. The Fifth Circuit got it wrong and the Ninth now follows them down the rabbit hole. It’s time for another opinion.